[Civ. No. 17035. Third Dist. Aug. 14, 1978.]

CITY OF SACRAMENTO et al., Plaintiffs and Respondents, v.
THE MUNICIPAL COURT FOR THE SACRAMENTO JUDICIAL
DISTRICT OF SACRAMENTO COUNTY,
Defendant and Respondent;
ALEXANDRA POPE, Real Party in Interest and Appellant.

**COUNSEL**

Paul N. Halvonik and Quin Denvir, State Public Defenders, Gary S. Goodpaster and Ezra Hendon, Chief Assistant State Public Defenders, Mark L. Christiansen and Richard G. Fathy, Deputy State Public Defenders, for Real Party in Interest and Appellant.

No appearance for Defendant and Respondent.

James P. Jackson, City Attorney, and Elizabeth Hassard Silver, Deputy City Attorney, for Plaintiffs and Respondents.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Robert D. Marshall and Vincent J. Scally, Jr., Deputy Attorneys General, and Dennis W. De Cuir, City Attorney (Roseville), as Amici Curiae on behalf of Plaintiffs and Respondents.

## OPINION

**REGAN, J.**—On January 21, 1977, real party in interest (hereafter Pope) was arrested by Officers Aurich and Souza of the Sacramento City Police Department for wilfully resisting, delaying, or obstructing them in the performance of their duties, a violation of Penal Code section 148. Pope was subsequently charged in Sacramento Municipal Court with this misdemeanor.

For the purposes of asserting self-defense and for the possible impeachment of prosecution witnesses, Pope sought to discover what citizen complaints of excessive force or violence had been lodged against the two arresting officers during their employment as policemen. Such records were sought on the ground they would reveal the names of persons who could give testimony tending to show the officers had a propensity to use excessive force in making arrests.

A declaration of former Sacramento Chief of Police, William J. Kinney, was filed in the action which showed that on August 13, 1976, he had ordered destruction of all police department internal investigation files concerning investigations which had been completed prior to July 1974. All such files were destroyed, except those which resulted in the termination or resignation of the police officer or which involved pending civil or criminal matters. Furthermore, in any case where, as a result of an investigation conducted by the Internal Investigation Section, any type of discipline was imposed on a police officer by way of reprimand, suspension, or demotion, a letter setting forth the factual basis for such disciplinary action was retained in that officer's personnel file. Chief Kinney declared he acted under city council resolution 76-181.

Upon motion of Pope the municipal court issued a subpoena and a subpoena duces tecum to Kinney, ordering him to testify and to produce documents issued during the preceding two years "which discuss policy regarding disclosure or destruction of information about peace officers," contained in the police files. Kinney moved to quash the subpoenas. The motion was heard in municipal court and denied.

Kinney and the City of Sacramento sought a prerogative writ in the superior court to prohibit the municipal court from enforcing its subpoena and subpoena duces tecum. The superior court issued a writ of prohibition as prayed. Pope appeals.

Of the two officers who arrested Pope, only one (Souza) was employed as a police officer during the period of time covered by the destroyed records. He had been hired in June 1973 and the destroyed records predated July 1974. The other arrresting officer (Aurich) was not hired until January 1976. The crucial period therefore extends from June 1973 (the time of hiring of Officer Souza) through June 1974. Any complaints which might have been made during this period against Officer Souza for excessive use of force would have been destroyed.

The records were destroyed pursuant to Government Code section 34090 as supplemented by Sacramento City Council Resolution No. 76-181. The two taken together authorize a city department head, with the consent of the city manager and city attorney, to destroy any city record under his charge which is not less than two years old (with several exceptions not here applicable). It is not denied by Pope that Kinney had the necessary consents and the records were over two years old.

■ Pope relies principally upon *Pitchess* v. *Superior Court* (1974) 11 Cal.3d 531 [113 Cal.Rptr. 897, 522 P.2d 305], and *People* v. *Hitch* (1974) 12 Cal.3d 641 [117 Cal.Rptr. 9, 527 P.2d 361]. *Pitchess* holds, in essence, that citizen complaints against police officers are discoverable in prosecutions similar to those under Penal Code section 148 since such complaints may have significance to a defendant in making his defense. *Hitch* held, in brief, that officers or prosecutors must preserve material evidence in their possession that has a reasonable possibility of constituting a favorable defense to a defendant.

*Pitchess, supra,* is not a case involving the destruction of records or a duty to retain records. It involves only the right to *discovery* where records are in existence.

*Hitch, supra,* dealt with the destruction of *evidence* obtained by the prosecution in the case itself and directly related to the guilt or innocence of the defendant. The item destroyed was a breathalyzer ampoule obtained from the defendant who was thereafter charged with driving under the influence of alcohol. Such evidence was directly relevant to the guilt or innocence of the defendant on trial and, indeed, was obtained by the law enforcement agency for the very purpose of establishing the defendant's guilt or innocence. It was destroyed during the pendency of the trial at a time when its relevance to the pending case was clear.

In neither *Hitch* nor *Pitchess* is it held or suggested that records pertaining to citizens' complaints may not be destroyed after a reasonable period of time. Furthermore, neither case holds nor suggests that a law enforcement agency has a duty to retain and preserve records permanently that may possibly benefit prospective defendants in future cases.

It is not contended by Pope that either Government Code section 34090 or city council resolution 76-181 is unconstitutional or otherwise invalid. Kinney destroyed records in conformity with these statutory authorizations, and he did so at a time which was several months before the acts took place which resulted in Pope being charged with the crime involved here. Kinney had no reason to know or to believe any of the records he destroyed pursuant to statutory authorization would later become of any use to Pope.

It was alleged below that Kinney and other city officials engineered the passing of the resolution authorizing record destruction (and Chief Kinney then destroyed records) "purposefully and with intent to frustrate the clear mandate of *Pitchess* v. *Superior Court,* 11 Cal.3d 531 . . . ." Kinney denied any such intent or purpose. On appeal, Pope urges that this created an issue cognizable by us under *Hitch* as to whether the record destruction was done in good or bad faith. There is no such issue in this case. In *Hitch,* it was only *after* the Supreme Court determined that the ampoule used in a breathalyzer test is an item of evidence which must be retained for the trial, that the court went on to discuss the significance of nonmalicious destruction as opposed to purposeful, bad-faith destruction of evidence. The significance lies in the sanctions which would be imposed, i.e., exclusion of results of the breathalyzer test from evidence as opposed to possible dismissal of the action itself. (See *People* v. *Hitch, supra,* 12 Cal.3d at pp. 652-653; fn. 6, at p. 653.) Under the facts here we do not reach the point where any rational extension of

the *Hitch* doctrine can be made to apply, *ab initio,* to the records destroyed.

The judgment is affirmed.

Puglia, P. J., and Evans, J., concurred.

A petition for a rehearing was denied September 12, 1978, and appellant's petition for a hearing by the Supreme Court was denied October 12, 1978.