[Crim. No. 21063. Aug. 28, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSEPH ANTHONY ZAMORA, Defendant and Appellant.

**COUNSEL**

Irwin Siegel for Defendant and Appellant.

Quin Denvir, State Public Defender, Charles M. Sevilla, Chief Assistant State Public Defender, Wilbur F. Littlefield, Public Defender (Los Angeles), Dennis A. Fischer and Robert Berke, Deputy Public Defenders, A. Wallace Tashima, Tracy S. Rich and Morrison & Foerster as Amici Curiae on behalf of Defendant and Appellant.

John K. Van de Kamp, District Attorney, Harry B. Sondheim, Donald J. Kaplan and Richard W. Gerry, Deputy District Attorneys, for Plaintiff and Respondent.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Norman H. Sokolow, Acting Assistant Attorney General, Howard J. Schwab and Carol Wendelin Pollack, Deputy Attorneys General, Burt Pines, City Attorney (Los Angeles), George C. Eskin, Chief Assistant City Attorney, Rand Schrader, Laurie Harris and S. Thomas Todd, Deputy City Attorneys, as Amici Curiae on behalf of Plaintiff and Respondent.

OPINION

**TOBRINER, J.**—Defendant appeals from convictions for battery on a police officer (Pen. Code, §§ 242, 243) and resisting an officer in the discharge of his duties (Pen. Code, § 148). About two weeks before defendant's arrest in May of 1976, the Los Angeles City Attorney's office directed the destruction of all past records through 1974 of citizen complaints against police officers, excepting only complaints found meritorious by police investigation. As we shall explain, we have determined that the destruction of unsustained citizen complaints was entirely improper, and that such destruction deprived defendant of the opportunity to locate witnesses who could testify that on past occasions the officers involved in his case had used excessive or unnecessary force.[1] We therefore conclude that the trial court erred in failing to impose sanctions upon the prosecution.

In deciding the appropriate sanction in the present case we examine and weigh three considerations. First, we note that although the record indicates that complaint records were destroyed improperly, and with the knowledge that such records were subject to defense discovery, such destruction does not suffice to prove that the police or city attorney acted in bad faith. Second, the destroyed records are not material evidence, but merely a possible source through which defendants might discover witnesses to impeach the testifying officers. Third, although a sanction should be severe enough to deter improper destruction of records, the sanction of dismissal urged by the defendant would result in the unfortunate consequence that an officer named in a destroyed complaint could be assaulted or resisted with impunity. These considerations lead us to conclude that a severe sanction should be imposed but that dismissal of the charges against defendant would be too drastic.

We therefore believe that the correct sanction in this case is that proposed by Presiding Justice Klein in her opinion for the Court of Appeal: the trial court should instruct the jury (a) that the officers in question used excessive or unnecessary force on each occasion when complaints were filed against them but that the complaint records later were destroyed, and (b) that the jury may rely upon that information to infer that the officers are prone to engage in excessive or unnecessary force (see Evid. Code, § 1103) and that the officers' testimony regarding inci-

---

[1] Unsustained complaints are discoverable as well as sustained complaints. (*Saulter* v. *Municipal Court* (1977) 75 Cal.App.3d 231, 240 [142 Cal.Rptr. 266]; *Kelvin L.* v. *Superior Court* (1976) 62 Cal.App.3d 823, 829 [133 Cal.Rptr. 325].)

dents of alleged police force may be biased (see Evid. Code, § 1101, subd. (c)). The failure of the trial court to impose this or any sanction upon the prosecution in the present case constitutes reversible error.

### 1. *Summary of proceedings below.*

Defendant was charged with one count of battery against Los Angeles Police Officer Nelson and one count of resisting Officer Nelson in the discharge of his duties. The prosecution evidence at trial indicated that on May 22, 1976, several officers responded to a call that defendant and his father, Raymond, were involved in an argument. Officer Nelson entered the Zamora home first and, according to the police testimony, defendant immediately attacked him. A scuffle ensued between the officers and defendant, his father, and his brother Pedro. The officers subdued and arrested the three Zamoras. According to defendant, as well as friends and relatives of defendant who witnessed the incident, however, Officer Soelitz, not Nelson, first entered the premises. The defense evidence indicated that Soelitz attacked defendant without provocation.

Defendant, his father, and his brother were tried jointly. The jury convicted defendant as charged, acquitted defendant's father, and deadlocked as to Pedro Zamora. Defendant appealed to the appellate department of the superior court, which reversed the conviction. The Court of Appeal transferred the cause to that court pursuant to California Rules of Court, rule 62(a); we granted a hearing following the Court of Appeal decision.

The principal issue on appeal relates to the destruction of police records by direction of the city attorney's office. Prior to trial, defendant's counsel made an informal request of the city attorney's office for discovery of records relating to the police officers involved. The city attorney agreed to produce records of any citizen complaints charging racial prejudice or excessive use of force against Officers Nelson, Soelitz, Schroyer, and Skiles; he assured counsel that the records would include the names, addresses, and phone numbers of the complainants.

The city attorney subsequently supplied the promised information as to Officer Nelson, and informed defendant that no complaints had been filed against Officer Skiles. With respect to Soelitz and Schroyer, however, he gave defendant only the names of complainants—without

addresses or phone numbers—and stated that no further information was available.

Defendant's father, Raymond Zamora, filed a formal motion for discovery of the complaint records; defendant joined in the motion. At a hearing on the motion before Judge Michael Sauer, the prosecution revealed for the first time that all records of unsustained complaints from 1949 to 1974 were destroyed on May 5 and 7 of 1976, about two weeks before the incident at the Zamora home. Sergeant Stark of the city police department acknowledged that the police knew that the records might have some relevancy in criminal proceedings, but insisted that an order of the city council sanctioned the destruction. Judge Sauer concluded that the records were "destroyed by the City Council on the advice of the attorneys, advice of the City Clerk, advice of the various agencies, that they be destroyed. There has been no showing that they were done deliberately to keep you [Zamoras' attorneys] from receiving such information."

Defendant renewed his discovery motion before Judge Mary Waters, who presided at the trial. Defendant attached to his motion a copy of the police request to the city council for "authority to destroy obsolete records," noting that the request referred only to "miscellaneous files and memos" and did not suggest that the police sought destruction of complaint records subject to defense discovery. He attached also the resolution of the city council in response to that request.[2] The resolution states that numerous city departments, including the police department, "desire to destroy certain records...which have served their purpose and are no longer required." Reciting that "none of said records...are less than five (5) years old," the resolution approves requests for destruction of a variety of city records including miscellaneous police records through 1974.[3] In a postconviction hearing Judge Waters reviewed these documents and the transcript of the hearing before Judge Sauer, and concluded that the destruction of records was "not deliberate, malicious, or wilful."

---

[2] The declarations submitted by defendant to verify the police request and the council resolution did not reflect the place of execution of the declarations. (See Code Civ. Proc., § 2015.5.) The authenticity of the documents themselves, however, is not questioned.

[3] We note that under Government Code section 34090 as it then read, the city council lacked authority to approve destruction of records less than two years old. The city council resolution, adopted May 3, 1976, appears to violate this statute by authorizing destruction of records through the end of 1974. It is. not clear, however, whether any records less than two years old were actually destroyed.

During the pendency of the present appeal, defense counsel in other cases developed additional facts and obtained further documents concerning the destruction of the complaint records. The Los Angeles County Public Defender, appearing here as amicus curiae, has asked us to take judicial notice of the records in three such cases and of a number of documents discovered and admitted into evidence in other cases. The People oppose our taking judicial notice on the ground that the requested documents and court files relate to evidentiary matters which should have been presented to the trial court. (See *People v. Preslie* (1977) 70 Cal.App.3d 486, 493 [138 Cal.Rptr. 828]; *People v. Superior Court (Mahle)* 3 Cal.App.3d 476, 482, fn. 3 [83 Cal.Rptr. 732].) Although we regret that we must thus decide the present appeal upon a record less complete than that developed in later cases, we find the People's position viable and decide that we should not take judicial notice of matters which should have been, but were not, presented to the trial court.

2. *The municipal court erred in failing to impose sanctions on the prosecution for the destruction of complaint records.*

"[T]he intentional suppression of material evidence favorable to a defendant who has requested it constitutes a violation of due process, irrespective of the good or bad faith of the prosecution." (*People v. Hitch* (1974) 12 Cal.3d 641, 645 [117 Cal.Rptr. 9, 527 P.2d 361]; *Dell M. v. Superior Court* (1977) 70 Cal.App.3d 782, 786 [144 Cal.Rptr. 418].) Although complaint records themselves may not be material evidence, the defendant is entitled to discovery of such records because they may lead to evidence admissible under Evidence Code section 1103. (*Pitchess v. Superior Court* (1974) 11 Cal.3d 531, 537-538 [113 Cal.Rptr. 897, 522 P.2d 305].) Consequently, courts have not hesitated to conclude that the suppression or destruction of discoverable complaint records also constitutes a violation of due process. (See *Dell M. v. Superior Court, supra,* 70 Cal.App.3d 782, 786.) The court must impose appropriate sanctions in such a case in order to uphold defendant's right to a fair trial and to deter prosecution attempts to defy or circumvent judicial authority.

The prosecution does not dispute the fact that the city attorney's office destroyed complaint records, and that the destruction of the records deprived defendant of the opportunity to locate witnesses who might

testify concerning the officers' past use of excessive or unnecessary force. Seeking to avoid the imposition of sanctions which would ordinarily follow from such undisputed facts, the prosecution argues that the records were lawfully destroyed pursuant to a resolution of the Los Angeles City Council and established administrative procedures, and not with the specific purpose of violating the rights of defendant Zamora.[4] As we shall explain, the prosecution's arguments cannot stand analysis.

■ The prosecution urges as its first contention that the city council authorized the destruction by a resolution adopted pursuant to Government Code section 34090, which states that: "Unless otherwise provided by law, with the approval of the legislative body by resolution and the written consent of the city attorney the head of a city department may destroy any city record, document, instrument, book or paper, under his charge, without making a copy thereof, after the same is no longer required. [¶] This section does not authorize the destruction of:... [¶] (d) Records less than two years old...."[5]

---

[4] The People contend that defendant's discovery request was overbroad and did not show sufficient cause for discovery; they further argue that production of the names of complainants sufficiently complied with the request and production of addresses would be useless. The Court of Appeal properly rejected all these contentions. Its opinion notes: "The People...did not question the sufficiency of defendant's discovery request in the court below or demand that a formal motion be made, but instead expressly agreed to provide the names and addresses of the pertinent complainants. Since defendant was thus led to believe that his discovery request would be complied with without a further showing on his part, it would be manifestly unfair at this late stage to give consideration to the People's criticisms of that request. (Cf. *Kelvin L. v. Superior Court, supra*, 62 Cal.App.3d 823, 827 [133 Cal.Rptr. 325]; see *People v. McManis* (1972) 26 Cal.App.3d 608, 617-618 [102 Cal.Rptr. 889], regarding compliance with informal discovery requests.)

"Further, since the prosecution's agreement to comply with defendant's discovery request included an express promise to supply the addresses of the citizen complainants, the People will likewise not be heard to argue now that the production of some of the complainants' names alone was sufficient for compliance or that the missing addresses would, in all probability, have been useless to the defense because of their ages. We note only that even if a substantial number of the complainants were no longer living at the addresses stated in the destroyed files, the addresses, if available, could no doubt have provided leads to the complainants' current whereabouts."

[5] At the time of the destruction of the complaint files in May 1976, Government Code section 34090 was the operative statute authorizing the destruction of the records. As of January 1, 1979, however, that section was superseded by the more specific provisions of Penal Code section 832.5, which requires retention of complaints for a period of at least five years. The 1978 Legislature also enacted Evidence Code section 1045, barring defense discovery of complaints concerning conduct occurring more than five years before the event which is the subject of the litigation.

Citing *City of Sacramento* v. *Municipal Court (Pope)* (1978) 83 Cal.App.3d 795 [148 Cal.Rptr. 114] (hereafter cited as *Pope*), the People maintain that no sanction should be imposed if records are destroyed pursuant to the quoted language of section 34090. The present case, however, does not exemplify the strict compliance with statutory requirements for the destruction of records that justified *Pope*'s refusal to impose sanctions. In the present case the Los Angeles Police Department, acting apparently under advice of the city attorney's office, submitted a vague and misleading request for destruction of miscellaneous records without disclosing the significance of the records nor the purpose for which destruction was sought. The city council apparently approved the request under the mistaken impression that the records were more than five years old and no longer useful. We doubt that the Los Angeles City Council actually considered and intended to approve the destruction of any records discoverable by defendants and less than five years old.

Furthermore, as we noted earlier, the resolution of the council did not comply with section 34090 since it authorized destruction of records less than two years old. The Attorney General recently observed that "if destruction is desired [under Gov. Code, § 34090], it may only be done in the manner provided for by the statute. The mode prescribed is the measure of the power." (57 Ops.Cal.Atty.Gen. 307, 310 (1974).) We conclude that the People cannot justify the destruction of the records by reliance upon section 34090 and the city council resolution.

■ Secondly, the People may not avoid sanctions by reliance upon our statement in *People* v. *Hitch, supra*, 12 Cal.3d 641, 652-653, to the effect that "intentional but nonmalicious destruction" of evidence did not warrant sanctions if "the governmental agencies involved have established, enforced and attempted in good faith to adhere to rigorous and systematic procedures designed to preserve" the evidence. The present record discloses no "rigorous and systematic procedures" designed to preserve evidence, but the wholesale destruction of records previously preserved.[6]

---

[6]We also distinguish the Court of Appeal decision in *Robinson* v. *Superior Court* (1978) 76 Cal.App.3d 968 [143 Cal.Rptr. 328]. The court there did not impose any sanctions because of the destruction of jailhouse visitor passes, since such passes were not intended as records and the police were not aware that their preservation might aid the defense. In the present case, the complaint files were records retained by the city for many years; the city attorney's office was aware that such records were discoverable under our decision in *Pitchess* v. *Superior Court, supra*, 11 Cal.3d 531, because of their potential usefulness to defendants.

■ We reject also the last ground advanced by the prosecution: that the city did not destroy the records with the express purpose of depriving this particular defendant of useful evidence. Proof of a specific intent to deprive a particular defendant of evidence, as contrasted to an intent to deny evidence to a class of potential defendants, is not a prerequisite to imposition of sanctions. Our decision in *Pitchess* establishing the right of defendants to discover citizen complaints necessarily implies a duty on the city's part to retain such records for a reasonable period of time. (See *Pope, supra*, at p. 799; cf. *People* v. *Nation* (1980) 26 Cal.3d 169, 175 [161 Cal.Rptr. 299, 604 P.2d 1051].) The purpose underlying that obligation is to protect the discovery rights of persons involved in altercations with the police. We drew no distinction in *Pitchess* between persons who had already been involved in such altercations and those who might be involved in the future; we make no such distinction here; the destruction of records involved in this case equally violates the discovery rights of both classes of defendants. Redress of that violation requires the imposition of appropriate sanctions by the trial court.

■ 3. *An instruction to the jury relating the destruction of the complaint records to the officers' testimony is the appropriate sanction in the present case.*

Defendant argues that the only appropriate sanction in the present case is dismissal of all charges against him. The People, on the other hand, relying on the trial court's failure to find bad faith, urge that only minimal sanctions or none at all be imposed. As we explain, in our view, this case, falling between the two positions, calls for a severe sanction but one short of dismissal of the charges.

We first observe that the courts enjoy a large measure of discretion in determining the appropriate sanction that should be imposed because of the destruction of discoverable records and evidence. "[N]ot every suppression of evidence requires dismissal of charges. . . . The remedies to be applied need be only those required to assure the defendant a fair trial." (*Brown* v. *Municipal Court* (1978) 86 Cal.App.3d 357, 363 [150 Cal.Rptr. 216]; see *Dell M.* v. *Superior Court, supra*, 70 Cal.App.3d 782, 788.)[7]

---

[7]Courts and Legislatures have displayed considerable flexibility in devising remedies fashioned to the facts of each particular case. In *People* v. *Hitch, supra*, 12 Cal.3d 641, failure of the police to preserve a breath ampoule led not to dismissal of the charges, but rendered the breath alcohol test inadmissible. In *Brown* v. *Municipal Court, supra*,

Review of prior cases suggests the factors that guide the exercise of that discretion. First, "the imposition and mode of sanctions depends upon the particular circumstances attending such loss or destruction." (*People* v. *Hitch, supra,* 12 Cal.3d 641, 650 [117 Cal.Rptr. 9, 527 P.2d 361].) Thus lawful and proper destruction requires no sanction (*Pope, supra,* 83 Cal.App.3d 795; *Robinson* v. *Superior Court, supra,* 76 Cal. App.3d 968); illegal and malicious suppression of evidence may result in dismissal (see *People* v. *Mejia* (1976) 57 Cal.App.3d 574 [129 Cal. Rptr. 192]; *Dell M.* v. *Superior Court, supra,* 70 Cal.App.3d 782).

Second, the sanction depends on the materiality of the evidence suppressed. In *Hitch,* for example, we noted that bad faith destruction of evidence which might conclusively demonstrate innocence could require dismissal. (12 Cal.3d 641, 653, fn. 7.) Suppression of evidence which might impeach a witness for bias, however, may result in a new trial instead of a dismissal (*Giglio* v. *United States, supra,* 405 U.S. 150); suppression of evidence immaterial to the charge invokes no sanction (see *Dell M.* v. *Superior Court, supra,* 70 Cal.App.3d 782, 788).

Finally, the courts must consider the impact of the sanction upon future cases and future police conduct. If a sanction is to deter suppression of records and evidence, it must contain a punitive element; it must outweigh the benefit that the prosecution gains from the suppression. At the same time the court must bear in mind the public interest in law enforcement, and the harm which may be inflicted by a sanction which prevents the trial and conviction of possibly guilty future defendants.

We examine the record in the present case in light of the foregoing considerations, looking first at the circumstances of the destruction of the records. Two municipal court judges, after hearing and argument, found that the destruction here was not malicious or perpetrated in bad faith; on the limited record of this case we cannot overturn that finding. Nevertheless, the police department and the city attorney's office knew that the records were subject to defense discovery. They knew, too, that

---

86 Cal.App.3d 357, police refusal to allow a defendant to take a blood alcohol test rendered inadmissible a breath alcohol test favorable to the prosecution. In *Giglio* v. *United States* (1972) 405 U.S. 150 [31 L.Ed.2d 104, 92 S.Ct. 849], the prosecution concealed a promise of immunity to a witness; the court ordered a new trial in which the evidence was disclosed. Finally, under Evidence Code section 1042, prosecution assertion of a privilege of nondisclosure results in an adverse finding "upon any issue in the proceeding to which the privileged information is material."

the process which led to the approval of the destruction of the records had not afforded the ground for a careful and informed decision of the city council. If defendant here has proven less than a malicious and bad faith suppression of evidence, he has still shown more than a proper and innocent act which might avoid sanction.

Militating against defendant's proposed sanction of dismissal, however, is the fact that the suppressed records do not contain material evidence. If the records had not been destroyed, defendant could have learned the addresses and phone numbers (several years old) of persons who made unsustained charges against two of the officers involved. Defendant could possibly have located some of those persons; they might possibly have been suitable witnesses; the jury might have believed them and inferred that the officers, having used improper force in the past, did so again when they entered the Zamora residence. But this chain of possibilities, leading at most to impeachment evidence, does not demonstrate the need for the severe sanction suggested for suppression of conclusive evidence (see *People* v. *Hitch, supra*, 12 Cal.3d 641, 653, fn. 7) or material witnesses (see *People* v. *Mejia, supra*, 57 Cal. App.3d 574).

Finally, we recognize the desirability of the imposition of some sanction to deter future destruction of records or evidence in similar circumstances. We therefore reject the suggestion that the jury should merely be told that records of unsustained complaints were destroyed; such a proposal imposes no penalty on the prosecution; the prosecution may well prefer such an instruction to the nuisance of having to produce records for discovery.

The threatening effect of the sanction upon future law enforcement, however, impels us to reject the claim that dismissal is the appropriate penalty. If we ordered dismissal of the charges against this defendant, then on any future occasion when a defendant is accused of assaulting or resisting Officer Soelitz or Officer Schroyer, such defendant could claim the officer's use of unnecessary or excessive force provoked the encounter, and demand discovery of the complaint records. Similarly, any time either officer was an essential witness to an assault of another person, the defendant could demand the records to investigate whether the officer was biased. Since the records have been destroyed and could not be produced, the defendant in such a future case being similarly sit-

uated as defendant Zamora in the present case, would be entitled to the same sanction. If that sanction is dismissal of the charges, then anyone who assaulted those officers or engaged in forceful resistance to arrest by them would be immune from prosecution.[8]

Thus the trial court could foresee as the consequence of a dismissal in the present case the creation of a cadre of police officers who could not be called upon to quell a disturbance or to make an arrest because those resisting their authority could not be prosecuted. Indeed, the officers' personal safety might be seriously endangered. A police officer performing his duties will necessarily arouse anger and incur enmity; public knowledge that an assailant cannot be convicted for an assault on the officer would pose an extreme hazard.[9]

The officers named in the complaints did not decide to destroy the records of the complaints; the Los Angeles City Attorney's office did so. If that destruction were unlawful, and executed with the intent to thwart defense discovery, sanctions ranging from internal disciplinary measures to criminal prosecution (see Gov. Code, § 6200 (wilful destruction of public records)) were available to punish the malefactors. Since many of those persons are attorneys, a state bar inquiry would also be possible. Such penal and administrative sanctions would single out those actually responsible for the destruction of the records, without endangering the officers named in the complaints or impairing the public interest in the trial of persons accused of crime. The administrative sanctions might be more effective in deterring future conduct than would the dismissal of criminal charges.

For the foregoing reasons, we conclude that the appropriate sanction is that set out in the opinion of the Court of Appeal. According to that opinion, upon remand of this case, the court should instruct the jury that Officers Soelitz and Schroyer used excessive or unnecessary force on each occasion when complaints were filed against those officers, but

---

[8]The effect on the officers would resemble the ancient and obsolete punishment of outlawry, under which "one is deprived of the benefit of the law, and out of the King's protection." (3 Stroud's Judicial Dict. (4th ed. 1973) p. 1900.)

[9]The same reasons which induce us to reject the sanction of dismissal lead us to reject the proposal that the officers named in the complaints should be barred from testifying. Such a sanction would mean that the named officers could be assaulted or resisted with impunity so long as they were alone, and that other persons could also be assaulted when the officer was a crucial witness to the assault.

that the complaint records later were destroyed.[10] The court should also instruct the jury that they may rely upon that information to infer that the officers were prone to use excessive or unnecessary force (see *Kelvin L. v. Superior Court, supra,* 62 Cal.App.3d 823, 831) and that the officers' testimony regarding incidents of alleged police force may be biased. (Cf. *Cadena v. Superior Court* (1978) 79 Cal.App.3d 212, 221-222 [146 Cal.Rptr. 390].)

In our opinion, the sanction of a jury instruction will adequately redress the actual harm done to defendant by the destruction of the complaints. It will not, of course, provide him with a live witness who can testify to past police misconduct. The instruction, however, substantially favors defendant in other respects. First, it assumes that the destroyed records would have led defendant to favorable evidence; in reality, defendant might not have been able even to locate the witnesses identified in the records or, if he had found them, the resulting testimony might have proven useless. Second, the instruction deprives the prosecution of the opportunity to rebut the evidence of past misconduct by the officers. Finally, it prohibits the jurors from rejecting such evidence, although in the absence of the instruction such rejection would have been their prerogative.

We would thus tailor the sanction to compensate for the exact wrong done; we would attempt to remedy the harm to the victims by giving them the approximate equivalent of the destroyed records of the complaints. We prefer this redress to the imposition on the officers of the drastic penalty of denial of current and future defenses.

4. *The trial court's failure to impose the sanction of an adverse finding constitutes prejudicial error.*

With respect to this point we adopt the opinion of the Court of Appeal. It explained that: "The evidence presented at trial was closely balanced, as is reflected in the fact that defendant's two codefendants both escaped conviction .... Indeed, the trial was essentially reduced to a credibility contest in which the testimony of the arresting officers was to be weighed against that of defendant and his witnesses. Since all of the witnesses who testified on defendant's behalf were either friends

---

[10]Because we do not believe the city council intentionally authorized the destruction of any complaint records, we draw no distinction between records which could have been lawfully destroyed pursuant to a resolution conforming to Government Code section 34090 and those which could not lawfully be destroyed.

or relatives, it can be presumed that the jury discounted their testimony because of apparent bias. Access to the now destroyed complaint files may very well have enabled defendant to call favorable witnesses who did not have such an obvious interest in the outcome of the trial. That defendant was deprived of a fair trial by virtue of the absence of appropriate sanctions is accordingly manifest."[11]

For the foregoing reasons the judgment is reversed.

Mosk, J., and Newman, J., concurred.

**MANUEL, J.,** Concurring and Dissenting.—I concur in the judgment. While I am in accord with the views of the majority as to why the extreme sanction of dismissal should not be imposed, I am of the belief that under the circumstances disclosed by the record the severe penalty suggested by the Court of Appeal and adopted by the majority is unreasonable.

This is not a case where evidence existing contemporaneously with or subsequent to the event in question was destroyed. Rather, as the majority notes, the evidence was destroyed about two weeks before the incident at the Zamora home. Nor is this a case where evidence was destroyed in order to put this appellant at a disadvantage. (Maj. opn., *ante,* pp. 94-95.) Judge Sauer concluded that there was no showing that the destruction was done to keep defendant from receiving information contained in the destroyed documents. Judge Waters concluded that the records were not destroyed deliberately, maliciously or willfully.

Unlike *People* v. *Hitch* (1974) 12 Cal.3d 641 [117 Cal.Rptr. 9, 527 P.2d 361], we are not here concerned with an item of evidence which is

---

[11]"The People assert that whatever error occurred below should be assessed against the 'miscarriage of justice' standard explicated in *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]. But since suppression of evidence constitutes a violation of a defendant's due process rights (*People* v. *Hitch, supra,* 12 Cal.3d 641, 645; *People* v. *Kiihoa* (1960) 53 Cal.2d 748, 752 [3 Cal.Rptr. 1, 349 P.2d 673]), it would appear that the proper test to be employed here is that enunciated in *Chapman* v. *California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711, 87 S.Ct. 824, 24 A.L.R.3d 1065] for errors of a constitutional nature. (See *People* v. *Ruthford* (1975) 14 Cal.3d 399, 408 [121 Cal.Rptr. 261, 534 P.2d 1341].) Actually, with respect to the case at bench, the distinction between the two tests is of no significance since the error in question could not be considered harmless under either." (Fn. by the Court of Appeal.)

directly determinative on the issue of guilt or innocence. In *Hitch* the item sought was the breath sample from which evidence of the alcoholic content of the blood of the accused automobile driver could be ascertained. Evidence obtained in a pending case was there destroyed. Here the majority agrees that the records sought are not material evidence.

This is not a case where the missing records were known to contain meritorious complaints of police conduct. Rather the complaints involved here were unsustained.

The best that can be said for the defendant's position, in the record before us, is that the records were destroyed in apparent violation of Government Code section 34090.[1] In my view under the circumstances here presented, there is no such sinister conduct attending the destruction of the records as to warrant either dismissal of the suit or the giving of the instruction suggested by the majority. Our law furnishes ample guidelines for cases such as this—guidelines applicable to all parties, prosecutors and defendants alike. Evidence Code section 413 provides in part: "In determining what inferences to draw from the evidence or facts in the case against a party, the trier of fact may consider, among other things, the party's...willful suppression of evidence relating thereto...." With respect to a defendant's conduct juries may be instructed "If you find that a defendant attempted to suppress evidence against himself in any manner, such as [by destroying evidence] such attempts may be considered by you as a circumstance tending to show a consciousness of guilt. However, such evidence is not sufficient in itself to prove guilt and its weight and significance, if any, are matters for your consideration." (CALJIC No. 2.06 (4th ed. 1979).)

Under the circumstances revealed by the record in this case, it would appear that the most that defendant could reasonably expect would be an instruction based on Evidence Code section 413 and perhaps patterned on CALJIC No. 2.06, informing the jury that a specific number of complaints had been lodged against the officer in the past, that these records had been destroyed and that the jury may bear this in mind in determining whether this officer had a propensity to use excessive or unnecessary force. No more is required on the facts of this case. Application of the law, not the devising of sanctions should be our rule.

---

[1] I assume, for it has not been otherwise argued, that the City of Los Angeles, a chartered city, is bound by that code section. (See Cal. Const., art. XI, § 5, subd. (a).)

Clark, J., and Richardson, J., concurred.

**BIRD, C. J.,** Concurring and Dissenting.—I concur in the judgment and, for the sole purpose of achieving a single majority position to guide the trial court on remand, I join in the instructional directions to the trial court set forth in Justice Tobriner's opinion. However, I respectfully disagree with the reasoning of the lead opinion since it would effectively foreclose dismissal as a sanction in any case which involved the wholesale destruction of discoverable evidence. As a result, the lesson the police will draw from this decision is that if they maliciously destroy all the records which contain discoverable materials at one time, they do not have to fear any sanctions or reprisals. However, if they refuse on a case by case basis to disclose discoverable records, they face the possibility of dismissal of their case and contempt of court. (See *Dell M.* v. *Superior Court* (1977) 70 Cal.App.3d 782 [144 Cal.Rptr. 418].) I cannot join in reasoning that sanctions such an illogical result.

Respondent's petition for a rehearing was denied October 16, 1980. Clark, J., Richardson, J., and Manuel, J., were of the opinion that the petition should be granted.