[Crim. No. 23505. First Dist., Div. One. Dec. 31, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM HENRY BROWN, Defendant and Appellant.

**COUNSEL**

Vaughn E. Spunaugle, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, William D. Stein, Assistant Attorney General, Ann K.

Jensen and Morris Lenk, Deputy Attorneys General, for Plaintiff and Respondent.

---

**OPINION**

**ELKINGTON, Acting P. J.**—Defendant Brown's appeal is from a judgment founded upon a jury's finding him guilty of grand theft.

One of his appellate arguments is that "the evidence is insufficient to support a finding of guilty beyond a reasonable doubt."

■ On such a contention we are bound by *In re Roderick P.* (1972) 7 Cal.3d 801, 808 [103 Cal.Rptr. 425, 500 P.2d 1], as follows: "It is the function of this court in reviewing a criminal conviction on appeal to determine whether the record contains *any substantial evidence* tending to support the finding of the trier of fact, and in considering this question we must view this evidence in the light most favorable to the finding. . . . *The test is not whether guilt is established beyond a reasonable doubt.*" (Our italics.)

And the existence of substantial evidence will be determined by the following criteria. When a jury's finding of fact is attacked on the ground that there is not any substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether, on the entire record, there is any substantial evidence, contradicted or uncontradicted, which will support the finding of fact, and when two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the jury. It is of no consequence that the jury, believing other evidence or drawing other inferences, might have come to a contrary conclusion. (*People* v. *Johnson* (1980) 26 Cal.3d 557, 576-577 [162 Cal.Rptr. 431, 606 P.2d 738]; *Grainger* v. *Antoyan* (1957) 48 Cal.2d 805, 807 [313 P.2d 848].)

We state the evidence as it was presumably found true by the jury.

A police officer observed defendant Brown walking out of a large department store onto its parking area, carrying a large green plastic trash bag, which appeared to be quite full and bulging. Brown and the officer made "eye contact" followed (as described by the officer) by Brown's "cat that swallowed a canary" look. Brown placed the bag on the ground, and walked back into the store. His suspicion aroused, the officer went to the bag and observed it to be partially open. Inside he saw several variously colored women's bathrobes, which had fastened upon them the store's *intact* price tags. Having knowledge

that a portion of the tags on merchandise was customarily removed by the store's salespersons upon a sale, the officer concluded that Brown had carried out of the store unsold merchandise. He placed the apparently abandoned bag in his patrol car and entered the store, looking for Brown. Finding the suspect he asked him to step outside. Outside, by that time, was a store security officer who identified the bathrobes, 15 in all, as the store's unsold property. And inside the store was found a large gap in the rack where such robes were customarily exhibited to customers. Brown was thereupon arrested. Further evidence established that each of the 15 bathrobes was priced at $38, for a total of $570.

Grand theft is committed when personal property of a value exceeding $200 is stolen. (Pen. Code, § 487, subd. 1.)

■ It is settled that, as here in the absence of contrary evidence, the price charged by a retail store is sufficient to establish the value of the merchandise within the meaning of section 487. (*People* v. *Tijerina* (1969) 1 Cal.3d 41, 45 [81 Cal.Rptr. 264, 459 P.2d 680]; *People* v. *Cook* (1965) 233 Cal.App.2d 435, 438 [43 Cal.Rptr. 646].)

■ There was beyond any doubt substantial evidence of Brown's guilt of the crime of grand theft.

■ Brown states his remaining appellate argument as: "Failure to preserve evidence violates due process." It arises from the following circumstances.

The officer who arrested Brown had investigated hundreds of similar offenses at the department store. A policy had arisen for the police to return stolen merchandise to the store, which would hold it for any related prosecution, and dispose of it by sale when the prosecution was terminated by guilty plea, or dismissal, or otherwise. Never, in the officer's experience, had the store failed to follow the policy.

Assuming that the policy would again be followed, the officer turned over the stolen bathrobes to the store's security people. For some reason, or no reason, after taking photographs of the stolen bathrobes they were returned to the racks from which they had been stolen, and thereafter sold.

Relying upon *People* v. *Hitch* (1974) 12 Cal.3d 641 [117 Cal.Rptr. 9, 527 P.2d 361], Brown contends that because of the "*intentional*" (albeit in "good faith") act of the prosecution in precluding use of the bathrobes themselves as evidence, he was denied "due process," and that on his motion "*all testimony regarding the robes*" should have been suppressed, and the action (without the availability of such evidence) dismissed.

We disagree with the contention for reasons as follow.

We shall accept, but *arguendo* only, Brown's assertion that it was the prosecution (acting through the police officer) and not the department store, which rendered the stolen bathrobes unavailable.

It is of course the settled rule that the intentional suppression of material evidence favorable to a defendant who has requested it, constitutes a violation of *due process,* irrespective of the good or bad faith of the prosecution. (*People* v. *Hitch, supra,* 12 Cal.3d 641, 645.)

*People* v. *Hitch* further teaches that where "such evidence cannot be disclosed because of its intentional but nonmalicious destruction by the investigative officials, *sanctions* [italics added] shall in the future be imposed for such nonpreservation and nondisclosure unless the prosecution can show that the governmental agencies involved have established, enforced and attempted in good faith to adhere to rigorous and systematic procedures designed to preserve the [evidence]." (12 Cal.3d at pp. 652-653.) The issue before us thus, is whether the absolute sanctions of suppression of all evidence concerning the bathrobes, and dismissal, were required.

We observe first that: "Due process is a flexible concept; the precise procedures necessary to prevent the arbitrary deprivation of a constitutionally protected interest vary 'with the subject-matter and the necessities of the situation.'" (*In re Bye* (1974) 12 Cal.3d 96, 103 [115 Cal.Rptr. 382, 524 P.2d 854] [cert. den. 420 U.S. 996 (43 L.Ed.2d 679, 95 S.Ct. 1437)].)

And " 'the imposition and mode of sanctions depends upon the particular circumstances attending such loss or destruction.' " (*People* v. *Zamora* (1980) 28 Cal.3d 88, 100 [167 Cal.Rptr. 573, 615 P.2d 1361]; *People* v. *Hitch, supra,* 12 Cal.3d 641, 650.)

For imposition of such sanctions there must be "a reasonable possibility that the [subject evidence] would constitute material evidence on the issue of guilt or innocence." (*People* v. *Hitch, supra,* 12 Cal.3d 641, 649.) And: "Even if threshold materiality is apparent, a trial court need not impose sanctions unless the defendant makes a showing of *substantial materiality.*" (Our italics; *People* v. *Bailes* (1982) 129 Cal.App.3d 265, 271 [180 Cal.Rptr. 792], and see authority there collected.) "The mere possibility that an item of [such] information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." (*United States* v. *Agurs* (1976) 427 U.S. 97, 109 [49 L.Ed.2d 342, 353, 96 S.Ct. 2392].)

Illustrations, where a sanction of some sort seems clearly called for, will appear upon destruction of a blood alcohol specimen in a driving while drunk case (*People* v. *Hitch, supra,* 12 Cal.3d 641), or where the narcotics of a criminal charge are lost and the issue is whether the substance was in fact contraband, or where the record of past complaints against a police officer are destroyed and the issue is permissible self-defense (*People* v. *Zamora, supra,* 28 Cal.3d 88). In each such situation, the evidence would be critical and calculated to bear directly upon the question of the accused's guilt or innocence.

In the case before us the physical presence of the stolen bathrobes would have slight bearing upon the question of Brown's guilt or innocence. At issue was the credibility of the prosecution's witnesses; if they were believed, as they were, the absence of the bathrobes would have conferred neither prejudice upon Brown, nor benefit to the prosecution.

In the case at bench the trial court imposed the sanction of suppression of the bathrobes' photographs, and an extended jury instruction on the subject including the admonition that if "any law enforcement officer either destroyed or failed to preserve any one of those things in a deliberate design to falsely convict the defendant, you have a duty to acquit him of all the crimes charged against him."

We find those sanctions to be proper and sufficient (if necessary at all) under *People* v. *Hitch.* " '[N]ot every suppression of evidence requires dismissal of charges. . . . The remedies to be applied need be only those required to assure the defendant a fair trial.' " (*People* v. *Zamora, supra,* 28 Cal.3d 88, 99.) Here Brown was accorded the fair trial that was his due.

The judgment is affirmed.

Newsom, J., and Holmdahl, J., concurred.