[Crim. Nos. 11431, 11506. Third Dist. Jan. 31, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
GERALD O'HEARN et al., Defendants and Appellants.

**568**

COUNSEL

Kanter, Williams, Merin & Dickstein and Cathleen Williams for Defendants and Appellants.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Eddie T. Keller and Nelson P. Kempsky, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

ABBE, J.*—These two appeals brought by codefendants Gerald O'Hearn and Dennis D. Allbaugh, consolidated upon this court's own motion, present identical issues of law and fact.

Defendants Gerald O'Hearn and Dennis Allbaugh appeal from the judgment of conviction of possession of marijuana for sale (Pen. Code, § 11359) after trial by court. Defendants' sole contention is that since the sheriff intentionally destroyed 84 out of 85 marijuana plants seized, the trial court erred in allowing testimony concerning the destroyed plants.

FACTS

In the early evening of September 17, 1980, Undersheriff Jack Partlow was driving along a rural road in Siskiyou County when he observed a pickup truck moving down a driveway towards the road. As the sheriff watched, the truck stopped and backed up the driveway.

Sheriff Partlow walked up the driveway and observed that the bed of the pickup truck was filled with marijuana plants. Shortly thereafter defendants Dennis Allbaugh and Gerald O'Hearn approached the truck. Partlow identified himself to them. Allbaugh claimed to be the owner of both the truck and part of its cargo, and O'Hearn claimed ownership of a part of its cargo.

There were 85 plants in the pickup ranging from four to ten feet in length. The plants were generally bushy and exhibited substantial resin and budding. Officer Palmer estimated the total weight of these 85 plants to be about 100 pounds. Sheriff Partlow segregated one plant as a sample which was later identified as marijuana in a laboratory analysis. A large state forest service truck arrived and state forest personnel removed 84 plants from the pickup and put

*Assigned by the Chairperson of the Judicial Council.

them in the state truck, which already contained many other marijuana plants confiscated from 15 other nearby locations. All the plants in the state truck were removed to a storage facility.

Pursuant to court order all of the plants that had been collected were destroyed. Before destruction the weight of these plants was determined to be 2,970 pounds. A photograph was taken depicting the plants in bulk. One plant from each of the fifteen separate confiscations was retained and this was done before all the plants were commingled.

## DISCUSSION

"In *People* v. *Hitch* (1974) 12 Cal.3d 641, 650 [117 Cal.Rptr. 9, 527 P.2d 361], [the court] held that the obligation to disclose the existence of material evidence places on the state a correlative duty to preserve such evidence even without a request therefor, and directed that in the future law enforcement agencies take reasonable measures to ensure its adequate preservation." [Fn. omitted.] (*People* v. *Nation* (1980) 26 Cal.3d 169, 175 [161 Cal.Rptr. 299, 604 P.2d 1051].)

In the instant case the trial court found the evidence destroyed was "highly relevant" to the charge and that the evidence was not destroyed in compliance with Health and Safety Code section 11479, but that the sheriffs acted in good faith in an attempt to comply with that section. These findings are amply supported by the evidence. However, we do not agree with the trial court's ruling that since the actual physical destruction occurred pursuant to a court order that good faith was conclusively established and no sanctions were required.

The California Supreme Court in *People* v. *Hitch* (1974) 12 Cal.3d 641 at pages 652-653 [117 Cal.Rptr. 9, 527 P.2d 361], ruled that sanctions are inappropriate when evidence is intentionally destroyed in good faith only where "the governmental agencies involved have established, enforced and attempted in good faith to adhere to rigorous and systematic procedures designed to preserve the [evidence]."

The trial court found that the sheriff made a good faith attempt to comply with the provisions of Health and Safety Code section 11479 in the destruction of the 2,970 pounds of marijuana collected in the state truck from 16 different places, which included appellants'. But by that time it was too late to comply with that section as to each grower. The problem created in this case preceded the actual destruction of the plants. The effective destruction occurred when the approximately 100 pounds of plants found in the pickup were commingled with the 2,870 pounds of other plants since they could no longer be identified, analyzed or used as evidence in any way to establish quantity and

quality. Quantity is, of course, a key question on the issue of possession for sale or for personal use. This cannot be considered an attempt to adhere to "rigorous and systematic procedures" to preserve the evidence as required by *Hitch, supra,* and *People* v. *Zamora* (1980) 28 Cal.3d 88 [167 Cal.Rptr. 573, 615 P.2d 1361], nor compliance with Health and Safety Code section 11479. Here, as in *Zamora,* it is clear that the procedure employed by the sheriff in commingling all the plants seized in the 16 areas resulted not in the preservation of evidence, but rather, in its destruction by not being identifiable.

The People first argue that the evidence destroyed was not material because it did not bear on an element of the crime. ■ Evidence is material when there is a reasonable possibility that it would be favorable to the defendant on the issue of guilt or innocence. (*People* v. *Nation, supra,* 26 Cal.3d at p. 176.) ■ The quantity and quality of the contraband seized is always relevant to the issue of whether the narcotics are held for sale or personal use. (*People* v. *Shipstead* (1971) 19 Cal.App.3d 58, 77 [96 Cal.Rptr. 513].)

■ The defendants established through expert testimony that the potency of marijuana measured by its tetrahydrocannibal content varies significantly from plant to plant even among plants grown in the same place under similar growing conditions, and that the quantity of marijuana consumed varies greatly among users. The People argue the testimony of the police officers concerning the number of plants, their size and apparent potency as evidenced by the presence of resin and budding established that the defendant possessed a sufficient quantity of high quality marijuana to allow the trier of fact to infer the marijuana was held for sale and not for personal use. The People conclude that in light of this testimony even if the plants had been preserved it would not be reasonably possible that the defendant could have proven that they were not held for sale.

Had the officers, however, complied with Health and Safety Code section 11479, the defendants may have been able to impeach the officer's testimony both as to quantity and quality of the marijuana.

The People argue that because the evidence seized was harvested plants the only prerequisite to their destruction is stated by the last sentence in subdivision (c) of the statute, i.e., that one representative sample be retained.

The statute permits the destruction of that amount of a controlled substance in excess of 10 pounds only if the requirements of subdivisions (a) through (d) are met. The last sentence in subdivision (c) does apparently reduce the number of representative samples that need be retained from five to one when the controlled substance consists of growing or harvested plants.

But, at the time the plants were in effect destroyed by commingling them with the others in the state truck, the statute was ignored in the following particulars: (1) no photographs were taken which reasonably depicted the total amount of the defendants' plants, (2) the chief of the law enforcement agency did not determine it was reasonably possible to remove and store the plants and (3) the gross weight of the suspected controlled substance of defendants was not determined either by actually weighing it or by estimating its weight after dimensional measurements were taken. We conclude that the People may not justify the destruction of evidence herein at issue by reliance upon Health and Safety Code section 11479 in the absence of strict compliance therewith (*People* v. *Zamora, supra,* 28 Cal.3d 88, 98), and that evidence concerning the destroyed plants must be suppressed.

The judgments are reversed and the cases are remanded.

Carr, J., concurred.

**EVANS, Acting P. J.,** Dissenting.—I perceive the majority opinion as an overzealous adherence to the result achieved in *People* v. *Hitch* (1974) 12 Cal.3d 641 [117 Cal.Rptr. 9, 527 P.2d 361]. *Hitch* established that intentional suppression of material evidence (in that case a blood ampule sample in a drunk driving prosecution) favorable to a defendant who has requested it constitutes a violation of due process; the decision did recognize a good-faith exception to that rule. The provisions of Health and Safety Code section 11479[1] and the People's good-faith attempt to comply with those provisions would compel affirmance in my view. I view the majority opinion as flawed in several respects. *Hitch* is truly not applicable in this instance inasmuch as it is factually only facially apposite. In *Hitch* where the test ampule was destroyed, nothing remained available for defense examination; in this instance, "a representative sample" was preserved for evidentiary purposes. (§ 11479.) Following a decision by the county sheriff and undersheriff relative to the difficult task of storage to utilize the provisions of section 11479, subdivision (d), a large quantity, over 2,900 pounds, of marijuana gathered from 16 locations, including that of defendants, was destroyed. The statement in the majority opinion that "the chief of the law enforcement agency did not determine it was not reasonably possible to remove and store the plants and (3) the gross weight of the suspected controlled substance of defendants was not determined either by actually weighing it or by estimating its weight after dimensional measurements were taken" [see above] is simply a misstatement or ignorance of record fact. The sheriff and undersheriff did make the determination required and ordered destruction, and the officers involved in the seizure did in fact estimate the weight of the pickup load of marijuana taken from defendants prior to its transfer to the larger truck. Concededly, the photographs taken were not as

---

[1]All further code references will be to the Health and Safety Code.

contemplated by the statute as they did not depict the individual pickup load seized from the defendant but rather the total quantity taken from the total 16 locations, one of which produced defendants' 85 harvested marijuana plants. That photograph may be considered a flaw in literally meeting the provisions of section 11479. The two erroneous assumptions in the predicate of the majority opinion reveal its flaw.

The opinion continues "[h]ad the officers, however, complied with Health and Safety Code section 11479, the defendants may have been able to impeach the officer's testimony both as to quantity and quality of the marijuana." [P. 570, *ante.*] That quoted statement ignores the factual context and the statutory underpinning of this case. The defendants had available one of the harvested plants with which to attempt to impeach the officer's testimony as to the quantity. Quality is not involved in the charge of possession of marijuana for sale. The quality and character of the preserved plant was established to be high quality marijuana by the prosecution; that plant as evidence was available to defendants for examination; they also had available the officer's estimate of weight; the photograph of the entire 2,900 pounds could have been used in an attempt to impeach the officer's testimony equating 85 plants to the amount gathered. The quoted statements are simply polemics; they first ignore the good-faith exception articulated in *Hitch* that sanctions shall not be imposed if "the governmental agencies involved have established, enforced and attempted in good faith to adhere to rigorous and systematic procedures designed to preserve [evidence]." (12 Cal.3d at pp. 652-653.) When the facts of this case are viewed in the light of the provisions of section 11479, the prosecution has met the standard contemplated in *Hitch*. A representative sample was preserved (§ 11479, subd. (c)); the gross weight was estimated from dimensional measurements (§ 11479, subd. (c)); the chief law enforcement officer did make the required determination prior to ordering destruction (§ 11479, subd. (d)); the photograph of the entire load of contraband did not literally meet the photographic standard contemplated by the legislative enactment but such omission does not, in my view, take this case out of the purview of the good-faith compliance contemplated by *Hitch*. This is particularly true in light of the legislative intent behind section 11479 and the difficulties recognized by the enactment of that section. Moreover, the statement by the majority that with the entire crop of 85 plants, the "defendants may have been able to impeach the officer's testimony both as to quantity and quality of the marijuana" ignores the provisions of section 11479 which were substantially followed; at best the statement is pure speculation. It is not remotely likely that the preservation of 5 samples and 10 pounds (not required in the case of harvested plants) would have achieved impeachment of the officer's testimony any more than preservation of all 85 plants. Defendants had a representative sample available to analyze for quality and to equate for quantity in light of the testimony establishing the weight and number (85) of the confiscated harvested marijuana

plants from the defendants' possession. I would conclude a contrary result was not remotely possible if all plants had been preserved and the provisions of 11479 not invoked. I would further conclude on the record presented, as did the trial court, that the destruction was accomplished in good faith; as a consequence, substantial compliance with section 11479 in this factual context was sufficient.

I would affirm the judgment.