[No. B011764. Second Dist., Div. Five. Mar. 5, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
SPENCER WAYNE MOORE, Defendant and Appellant.

**COUNSEL**

Mark Bledstein and Leslie Ellen Shear, under appointments by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Gary R. Hahn and William R. Weisman, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**FEINERMAN, P. J.**—After a jury trial, defendant Spencer Wayne Moore was found guilty of two counts of attempted murder (Pen. Code, §§ 664/187). The jury further found that the defendant personally used a firearm as to both counts (Pen. Code, § 12022.5) and personally inflicted great bodily

injury as to one count (Pen. Code, § 12022.7). Defendant was committed to the California Youth Authority for a period not to exceed 10 years and was given credit for 257 days, including 86 days good time/work time.

On appeal, defendant contends that a mistrial should have been granted by the trial court when it was ascertained that certain handwritten notes of a police interrogation of a defense witness were not turned over to defense counsel prior to the testimony of the defense witness. The trial court found that the failure to turn over an investigating officer's notes, despite an informal agreement between the prosecution and defense for complete discovery, was not prejudicial. We concur and affirm the judgment.

### BACKGROUND

On October 7, 1983, the defendant was 16 years of age and a student at Compton High School in Los Angeles County. He resided in an area which was the neighborhood of the Lantana Block Crips (LBC) gang. The evidence was in conflict as to whether defendant was a member of the gang. Patrick Smith (Smith) was a former Compton High School student who was a member of a rival gang known as the Neighborhood Block Crips (NBC). On October 7, 1983, while he was on the campus of Compton High School, the undisputed evidence discloses that defendant aimed an automatic handgun at Smith and fired four shots. One bullet passed through Smith's arm and another bullet hit Karlene Barnes, a Compton High School student, who was trying to flee from the area of the shooting.

During the trial, the defendant and his witnesses attempted to prove that the defendant had been threatened by the NBC, had been provoked by Smith and had acted in self-defense when he shot Smith. The People's witnesses told a different story. Their evidence demonstrated that the defendant had a verbal altercation with Smith, that Smith never threatened the defendant with a weapon, that the defendant walked away from Smith after their verbal tiff and that defendant then turned around, pulled out a gun and fired four shots in quick succession in Smith's direction. Thereafter, defendant ran off campus and hid the gun he had used in an empty lot.[1]

One of the witnesses called by the defendant was Kenneth Harbor (Harbor). During cross-examination, Harbor was asked about certain inconsistent statements he had made when he was interviewed by the police and the prosecuting attorney. Harbor replied that he had been drinking when he was interviewed and that he had told his interrogators what they wanted to

---

[1]Defendant also testified that he had found the gun in the same empty lot and had armed himself with the weapon to protect himself.

hear to avoid being put in custody. In rebuttal, the People called one of the investigating police officers, Stone Jackson (Jackson). Among other things, Jackson testified that Harbor had told him that he had picked up the defendant at Nestor and Compton Boulevard near Compton High School,[2] that the defendant had gotten into his car and that the defendant had stated "he'd busted on some NBC's at the Compton High School." During cross-examination, Jackson indicated that he had refreshed his recollection, prior to testifying, from six pages of handwritten notes he had made during the interview with Harbor. Defense counsel was given an opportunity to review the notes, which contained the statements testified to by Jackson which the People utilized to impeach Harbor. At that point, the defendant asked the trial court to declare a mistrial. The motion was denied and the court made a finding that the prosecution's failure to provide the notes to the defendant during pretrial discovery was not prejudicial.

## DISCUSSION

Defendant contends that a mistrial was the only appropriate remedy for the prosecution's failure to tender Jackson's notes during discovery. Defendant argues that the notes would have led the defense not to call Harbor as a witness because they would have "anticipated" Jackson's impeachment testimony.

■ In *Brady* v. *Maryland* (1963) 373 U.S. 83 [10 L.Ed.2d 215, 83 S.Ct. 1194], the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material . . . irrespective of the good faith or the bad faith of the prosecution." (*Id.* at p. 87 [10 L.Ed.2d at p. 218].) In *People* v. *Ruthford,* (1975) 14 Cal.3d 399 [121 Cal.Rptr. 261, 534 P.2d 1341], the California Supreme Court imposed a stricter duty on prosecutors in this state by requiring them to disclose substantial material evidence favorable to the accused *without request* (*id.* at pp. 405-406) and also by requiring prosecutors to disclose evidence relating to the credibility of *prosecution* witnesses. (*Id.* at p. 407.)

■ In this case, Jackson's notes were not within the scope of materials that the prosecution has a duty to disclose under either *Brady* v. *Maryland, supra,* 373 U.S. 83, or *People* v. *Ruthford, supra,* 14 Cal.3d 399. Harbor's statements were not evidence "favorable to the accused;" nor did the evidence "relate to the credibility of *prosecution* witnesses." Harbor was called as a *defense* witness. When Jackson was called as a rebuttal witness,

---

[2]Harbor also stated that he had picked up the defendant and defendant's girlfriend earlier that day and dropped them off at a location north of Compton High School.

his testimony was limited to impeaching Harbor. No attempt was made to present any of Harbor's statements for the truth of the matters contained therein.

Trial courts have a large measure of discretion in determining the appropriate sanctions that can be imposed when the prosecution suppresses discoverable evidence. (*People* v. *Zamora* (1980) 28 Cal.3d 88, 99 [167 Cal.Rptr. 573, 615 P.2d 1361].) Here, the defendant did not make a written motion for discovery. As a result, we can only speculate as to the parameters of the "informal discovery" agreed upon between the prosecution and the defense. Assuming the prosecution agreed to turn over all interview notes in their possession, it was error for the People not to disclose the existence of Jackson's written notes prior to the commencement of the trial. Nevertheless, the circumstances in this case did not justify the sanction of a mistrial. Every defense witness was impeached by the prosecution. Harbor's statement that the defendant had told him "he'd busted on some NBC's at the Compton High School" added little, if anything, to the People's case. A whole parade of witnesses verified the fact that the defendant had fired a gun at Smith. Given the panoply of evidence received here, any error by the People was nonprejudicial and the ruling of the trial court denying a mistrial was correct.

The judgment is affirmed

Ashby, J., and Hastings, J., concurred.