[No. A040978. First Dist., Div. Three. Apr. 26, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
TOBY GONZALES, JR., Defendant and Appellant.

COUNSEL

Allan A. Samson for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Martin S. Kaye and Matthew P. Boyle, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**MERRILL, J.**—Toby Gonzales, Jr., appeals from a conviction for residential burglary. We affirm.

I

On September 23, 1986, shortly after 11 a.m., Janice Borrelli was returning to her condominium in Moraga when she noticed an unfamiliar car parked in the area. As she entered the front door, she saw a pile of her own and her roommates' belongings a few feet inside. When she called out "hello," she heard a gasp and the sound of someone brushing up against the wall. As she turned around and left the apartment, the front door slammed behind her. Frightened, she dropped her purse and some other things she was carrying, ran down the street and hailed a group of construction workers. She returned to her apartment with them and telephoned the police, giving a description of the strange car she had seen. The car was no longer there, and her purse, which she had dropped in her haste, was gone. The items she had seen stacked by the front door were also gone.

Within a few minutes, Borrelli heard a police siren. She went outside, got into her car, and followed a police car she saw chasing an automobile down the street. She followed until she found the police car, together with the other car she had previously seen, parked at a dead end. When she looked into the latter car she saw her possessions on the passenger seat, the same property she had earlier seen stacked up in her doorway. She identified a television set, a VCR, jewelry and a computer bag as some of these possessions.

Julie Richards testified that at approximately 11 a.m. on the day in question, she was driving in the area of Moraga Way and Moraga Road

when she saw a man coming down the side of a hill, carrying a gray, padded square bag which appeared to be full. Thinking he was in distress, she slowed down. When he got to the bottom of the hill, he crouched down behind a bush. Richards caught up with a friend of hers who was driving in front of her, and the two returned to the point where she had seen the man. Before they got there, they saw a black Camaro along the side of the road with police cars parked around it. She stopped and gave a description of the man she had seen to a police officer. Richards identified appellant as the man she had seen coming down the hill both from a photographic lineup and at trial.

Joaquin Alva testified that on this same date, he was at a gas station at the corner of Moraga Way and Moraga Road when he saw a young woman "jumping up and down waving and shouting." He observed some construction workers come to her assistance and then go with her up the hill to a nearby apartment complex. Soon thereafter, Alva saw a man come down the side of the hill, take off his shirt, throw it in the bushes, talk briefly to another person, and walk rapidly along the sidewalk to a dark-colored automobile parked on the side of the road. The man drove around the corner, stopped, got out, walked up the hill, and retrieved a bag or sack. After he put the sack in his automobile, a police car came up behind him. He drove off very rapidly, "with the tires screeching." Alva identified appellant as the man he had seen both from a photographic lineup and at trial, although he also testified that he was less than "60 percent sure" of the accuracy of his identification.

In respect to this incident, Officer Robert Priebe of the Moraga Police Department testified that he responded to a radio dispatch regarding a possible burglary near Moraga Way and Moraga Road, involving a black vehicle. As he approached the scene, he saw a black Camaro matching the given description parked on the side of Moraga Road. When he slowed down, the black car drove off; as he followed the car, it accelerated rapidly and he gave chase. The car pulled over and the driver jumped out and escaped into a condominium complex. Priebe gave Moraga Police Officer Jeff Price a description of the man and told him to look for him. Price subsequently contacted Priebe and asked him to look at a gardener who matched the description Priebe had given. When Officer Priebe came to see the man, he saw that it was not the suspect, and so informed Price. After unsuccessfully searching for the driver, Priebe and Price inventoried the items in the Camaro. Among other things, they found a blue plastic bag containing toiletry items including a dietary supplement canister with appellant's name and identification number on it. Priebe subsequently identified appellant as the driver of the car both from a photographic lineup and at trial.

Officer Price testified that after Priebe had given him a description of the suspect, he drove around the neighborhood until he saw an individual who he thought matched the description. He detained the person, identified as a landscape gardener, and called Officer Priebe to come and view this individual. When Priebe arrived, he told Price that it was not the person they were seeking. Price released the gardener and continued to look for the suspect, without success. Officer Price did not mention this incident in his police report. At first, Price testified that he did not take down the name or any other information about the individual he had detained. Later, however, he admitted that his initial testimony was incorrect, and he then testified that he did write down the man's name and the name of the man's employer, but subsequently destroyed his notes.

The Camaro was registered to Sam Gonzales, appellant's brother. Sam Gonzales was in custody at Alameda County jail at Santa Rita from July 31, 1986, to March 3, 1987. The parties stipulated that, if called, Officer Koller of the Hayward Police Department would testify that on September 21, 1986, he had stopped the subject Camaro, which was being driven by appellant at the time.

For the defense, Helen Cordero testified that she had known appellant for 20 years; that Sam, appellant's brother, owned a Camaro which he left with a female friend named Shirley LaVenture while he was incarcerated at Santa Rita; that LaVenture had a boyfriend who generally matched appellant's physical description; that Cordero thought she had seen the boyfriend driving the Camaro "a couple of times"; and that she had also seen appellant driving the car "a couple of times."

Kurt Norton, an investigation officer for the Contra Costa County Public Defender's office, testified that he interviewed Officer Priebe on at least four occasions, asking him questions about his recollections concerning the gardener Officer Price had detained. According to Norton, Priebe said that he could not remember any details about the gardener, and did not even remember what appellant looked like. Norton testified that he had been unable to find LaVenture or her boyfriend, although he admitted on cross-examination that he never contacted the district attorney's office or the police in an attempt to find her.

## II

Appellant's sole contention on appeal is that the trial court failed to impose sufficient sanctions for the prosecution's destruction of potentially exculpatory evidence regarding the gardener whom Officer Price had briefly detained. The contention is without merit.

Appellant first moved at the beginning of trial to dismiss or for sanctions on grounds of the prosecution's failure to preserve material evidence. At that point, it was believed that Officer Price had not obtained the gardener's name or any other information about him. The trial court denied the motion on the ground that there had been a mere failure to obtain evidence rather than a failure to preserve evidence. Subsequently, when Officer Price changed his testimony to state that he had in fact written down the name of the gardener and the gardener's employer but had destroyed his notes, the trial court reconsidered its ruling and determined that sanctions would be proper. It therefore gave an instruction to the jury directing it to acquit appellant if it found that Officer Price's destruction of or failure to preserve the evidence was deliberately designed to falsely convict appellant. The trial court further instructed that if the jury did not find such an intent to falsely convict appellant, then the jury's duty was "to evaluate this fact in light of the rest of the facts presented in this case and render a verdict in accordance with the evidence."[1]

Citing and relying on *California* v. *Trombetta* (1984) 467 U.S. 479 [81 L.Ed.2d 413, 104 S.Ct. 2528] and *People* v. *Brown* (1982) 138 Cal.App.3d 832 [188 Cal.Rptr. 324], appellant now complains that the trial court's instruction did not go far enough. Appellant's proposed instruction would have told the jury that Officer Price had obtained the name and identity of a "material witness," and that the identity of this witness had been "withheld" from both the prosecution and the defense.[2]

We agree with the trial court's refusal to give appellant's proposed instruction. It cannot be said as a matter of fact or law that the gardener was

---

[1] The instruction as given stated: "There has been testimony given by Officer Price that he destroyed or failed to preserve the name of the individual he detained in the vicinity of Camino Peral during his investigation of this incident. I instruct you that if you find such a destruction or failure to preserve to be a deliberate design to falsely convict this defendant you have a duty to acquit the defendant of the charge.

"However, if you find such destruction or failure to preserve to have been due to Officer Price's failure to recognize the potential significance of such information and to have been done without intent to falsely convict this defendant, then your duty is to evaluate this fact in light of the rest of the facts presented in this case and render a verdict in accordance with the evidence."

[2] Appellant's proposed instruction was as follows: "A law enforcement officer has a duty to preserve evidence seized by him in the course of an investigation.

"The evidence in this trial has shown that Officer Price of the Moraga Police Department obtained the name and identity of a material witness (the gardener mentioned during his testimony). The identity of that witness was withheld from both the prosecution and the defense, and was later destroyed by the officer (with his notes). The loss/destruction of that evidence is a factor which may be considered by you.

"Furthermore, if you find that any law enforcement officer either destroyed or failed to preserve evidence in a deliberate design to falsely convict the defendant, you have a duty to acquit him of the crime charged against him."

a "material witness." Moreover, the use of the word "withheld" would have been misleading to the jury. In the context of the proposed instruction, the word "withheld" gives a false connotation of an affirmative act on the part of the officer to deprive the appellant of information. ■ A trial court should not give instructions which are argumentative or which call upon the jury to accept specific evidence concerning which there is a factual dispute. If a judge does comment on the evidence, " 'such comment should, in the interests of justice, not be limited within an area selected by the defendant, nor given in the language of his [or her] choosing.' [Citation.]" (*People* v. *Watson* (1979) 89 Cal.App.3d 376, 386-387 [152 Cal.Rptr. 471].)

Moreover, we are not convinced that the trial court was required to give *any* such instruction under the facts as presented. ■ In *California* v. *Trombetta, supra,* 467 U.S. at pages 488-489 [81 L.Ed.2d at p. 422], the United States Supreme Court stated that "[w]hatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality, [citation], evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." ■ Here, although Price did obtain the gardener's name and that of his employer, he did not retain it because Priebe, the principal witness, specifically told him that the gardener was *not* the man for whom they were searching. Thus, the identity of the gardener had no apparent exculpatory value whatsoever prior to the time Price destroyed his notes. Comparable evidence could have been obtained from an investigation of the identities of the gardeners who worked at the location where Price detained the individual. Indeed, by establishing at trial that Price had thought the gardener matched the description of the suspect, appellant did present "comparable evidence."

■ In the recent case of *Arizona* v. *Youngblood* (1988) 488 U.S. 51, 58 [102 L.Ed.2d 281, 289, 109 S.Ct. 333], the United States Supreme Court held that "[u]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." ■ Certainly there was no showing of bad faith on the part of the police in this case. (See *People* v. *Angeles* (1985) 172 Cal.App.3d 1203, 1213-1217 [218 Cal.Rptr. 756].) The trial court gave an instruction which more than adequately addressed any legitimate concerns arising from Officer Price's destruction of his notes in this case. There was no error.

The judgment is affirmed.

Barry-Deal, Acting P. J., and Strankman, J., concurred.