[No. B069321. Second Dist., Div. Four. May 19, 1993.]

THE PEOPLE, Plaintiff and Appellant, v.
ANTONIO PASTOR CRUZ et al., Defendants and Respondents.

## COUNSEL

Gil Garcetti, District Attorney, Arnold T. Guminski and Diana L. Summerhayes, Deputy District Attorneys, for Plaintiff and Appellant.

Wilbur F. Littlefield, Public Defender, Albert J. Menaster, Howard Waco and Alex Ricciardulli, Deputy Public Defenders, Fritzie Galliani, J. Anthony Bryan and Gary M. Mandinach for Defendants and Respondents.

## OPINION

**SOVEN, J.**[*]—The People appeal from an order of dismissal in favor of defendants Antonio Pastor Cruz and Victor Pastor Cruz. The trial court dismissed the case because the police negligently lost a knife allegedly used in the charged crime of assault with a deadly weapon, to wit, a knife. We reverse.

### FACTS

The facts appear to be generally undisputed. A quarrel arose between defendants and the alleged victims, Manuel Gonzalez Sanchez and Amador Mayorga Romero. The victims' version was that defendants, without provocation, attacked them with knives, and that both victims were stabbed. Both

---

[*]Judge of the Los Angeles Superior Court sitting under assignment by the Chairperson of the Judicial Council.

victims were treated at a hospital for their injuries. Defendants' version was that they acted in self defense after the victims assaulted them with bottles.

The alleged assaults occurred on July 13, 1991. A police report was apparently prepared at the time when the alleged assaults occurred. That report is not part of the record, and was not before the trial court. The parties seem to agree that one or both victims described the knife, or one of the knives, as having a 12-inch blade, characterized by defense counsel as giving the impression that the knife was akin to a "horrendous sword." At the preliminary hearing, in December 1991, victim Amador Mayorga Romero agreed in testimony that the knives were of the kind that trucks carry for cutting meat and vegetables.

In ruling on defendants' motion to dismiss, the court summarized the facts: In about April 1992, defendants' fingerprint examiner contacted the investigating officer at the Los Angeles Police Department to examine the knife for the purpose of fingerprinting the knife. The fingerprint examiner was told that the knife had been destroyed. The knife had been recovered at the scene, protected against manhandling at the scene with a handkerchief, and deposited in the trunk of a police car.

The court, in granting defendants' motion to dismiss the case based on the prosecution's inability to produce the knife, stated as follows: "Obviously, the knife is a very critical portion of the case. It's in allegations, in the charges. The charges are assault with a deadly weapon, to wit, a knife. . . . [¶] . . . the knife was recovered by the police department. They obviously felt it was a crucial piece of evidence because they recovered it, apparently handled it very carefully, properly. . . . [¶] The record is silent as to . . . whatever happened with the knife while it was in police custody, . . . [¶] . . . I'm not prepared to say the police did it intentionally . . . but certainly it was destroyed, and was destroyed by the police apparently following the procedure, and apparently in error, obviously, probably, probably." The court continued: "This is a crucial piece of evidence, and they are not able to examine this evidence. [This] is especially in view of . . . defendant, Mr. Victor Cruz, . . . and then his proposed testimony that he never handled the knife, . . ."

## DISCUSSION

■ The parties agree that unless bad faith is shown, the failure of the prosecution to preserve "evidentiary material" which "might have exonerated the defendant" does not violate due process (*Arizona* v. *Youngblood*

(1988) 488 U.S. 51, 57-58 [102 L.Ed.2d 281, 289-290, 109 S.Ct. 333]; see *People* v. *Cooper* (1991) 53 Cal.3d 771, 810-811 [281 Cal.Rptr. 90, 809 P.2d 865]), but, even in the absence of bad faith, the failure of the prosecution to preserve evidence that "might be expected to play a significant role in the suspect's defense" does violate due process. (*California* v. *Trombetta* (1984) 467 U.S. 479, 488-489 [81 L.Ed.2d 413, 421-422, 104 S.Ct. 2528]; *People* v. *Johnson* (1989) 47 Cal.3d 1194, 1233-1234 [255 Cal.Rptr. 569, 767 P.2d 1047].) The parties also agree that the People did not act in bad faith in this case.

The sole issue then is whether, when the police booked the knife into evidence, it was or should have been apparent that the knife "might be expected to play a significant role in the suspect's defense," that is, the evidence possessed both "an exculpatory value that was apparent before the evidence was destroyed, and [was] of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." (*California* v. *Trombetta, supra,* 467 U.S. at pp. 488-489 [81 L.Ed.2d at pp. 421-422]; see also *People* v. *McPeters* (1992) 2 Cal.4th 1148, 1179 [9 Cal.Rptr.2d 834, 832 P.2d 146].)

Defendants suggest that evidence of an apparent exculpatory value means a "reasonable probability" that the evidence in question had exculpatory value. (See *United States* v. *Bagley* (1985) 473 U.S. 667, 682 [87 L.Ed.2d 481, 494, 105 S.Ct. 3375].) The precise meaning, however, of evidence of an apparent exculpatory value is not at issue in this case. The evidence in this case was inculpatory. Even accepting the trial court's description of the evidence as a "critical portion of the case," and "a crucial piece of evidence," the apparent importance of the knife was to the People, who were required to prove beyond a reasonable doubt that an assault with a knife had occurred, whether that knife was a paring knife or a sword. Not unlike the absent physical sample from the breath-alcohol machine in *Trombetta,* the knife was "much more likely to provide inculpatory than exculpatory evidence." (467 U.S. at p. 489 [81 L.Ed.2d at p. 422].)

Defendants contend that, on the facts of this case, the police should have recognized the importance of the seized knife because the police report showed that the victims' description of the knife was much different from a description of the knife seized. First, as noted, the police report was not before the trial court and is not before us. Second, a discrepancy in size might eventually prove useful to a defendant in impeaching a witness but is not the type of evidence that a reasonable police officer should be expected to recognize as having apparent exculpatory value.

Discrepancies in descriptions are commonplace, and, at bottom, defendants are contending that a defendant would be entitled to a dismissal in any

weapons case in which the weapon was lost.[1] Nothing in *Trombetta* or *Youngblood* or any California case suggests such an extreme result.

The judgments (orders of dismissal) are reversed.

Woods (A. M.), P. J., and Vogel (C. S.), J., concurred.

---

[1]We note that the trial court never considered the imposition of lesser sanctions. (See *People* v. *Zamora* (1980) 28 Cal.3d 88, 99-103 [167 Cal.Rptr. 573, 615 P.2d 1361]; *People* v. *Wimberly* (1992) 5 Cal.App.4th 773, 792-793 [7 Cal.Rptr.2d 152].)