Filed 5/5/16  P. v. Serratos CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C072041 |
| Plaintiff and Respondent, | (Super. Ct. No. SF115116A) |
| v. | |
| BENJAMIN SERRATOS III, | |
| Defendant and Appellant. | |

Defendant Benjamin Serratos III got behind the wheel of his Honda with a blood-alcohol content far exceeding the legal limit, drove far above the posted 55-mile-per-hour speed limit, and struck another vehicle from behind, sending it spinning into a pole, killing the driver Destanee Little, and injuring her two passengers.

1

A jury convicted defendant of second degree murder (Pen. Code, § 187; count 1),[1] gross vehicular manslaughter while intoxicated (§ 191.5, subd. (a); count 2), two counts of driving under the influence of alcohol causing injury (Veh. Code, § 23153, subd. (a); counts 3 & 5), two counts of driving with a blood-alcohol level of 0.08 percent or higher causing injury (*id.* at § 23153, subd. (b); counts 4 & 6), hit and run resulting in death or injury (*id.* at § 20001; count 7), and driving with a suspended license (*id.* at § 14601.2, subd. (a); count 8.) The jury also found true allegations defendant proximately caused bodily injury to multiple victims within the meaning of Vehicle Code section 23558 in connection with counts 2 through 6, and personally inflicted great bodily injury within the meaning of section 12022.7 in connection with counts 5 and 6. In a bifurcated proceeding, the trial court found true allegations defendant had one prior strike conviction within the meaning of sections 667, subdivision (d) and 1170.12, subdivision (b) in connection with count 7, had a prior serious felony conviction within the meaning of section 667, subdivision (a) in connection with counts 1, 2, 5, and 6, and had prior felony convictions within the meaning of Vehicle Code sections 23540 and 23560.

Defendant was sentenced to an indeterminate term of 30 years to life in state prison on count 1, and a determinate term of 18 years 8 months on the remaining counts as follows: six years (the upper term, doubled) on count 6, plus an additional three years on the great bodily injury enhancement, five years for the prior conviction pursuant to section 667, subdivision (a), and one year for the multiple-victims enhancement; a consecutive 16 months (one-third the middle term, doubled) on count 4, plus four months (one-third the middle term) on the multiple-victims enhancement; a consecutive two years (one-third the middle term, doubled) on count 7; and a concurrent six months on

_____

[1] Further undesignated statutory references are to the Penal Code.

count 8.  Defendant's sentences on counts 2, 3, and 5 were stayed pursuant to section 654.

Defendant appeals, contending (1) there is insufficient evidence to support his second degree murder conviction, (2) his convictions on counts 3 and 4 must be vacated because he committed a single act of drunk driving, (3) the trial court abused its discretion in denying his motion to continue the trial, (4) his trial counsel was ineffective, and (5) the trial court abused its discretion by limiting the time for defendant to present his motion for a new trial.[2]  We shall vacate defendant's convictions on counts 3 and 4 and otherwise affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

On the afternoon of June 12, 2010, defendant celebrated his daughter's fifth birthday with family and friends at a park in Lodi.  Defendant brought a 20-pack of beer to the party and was seen drinking beer that afternoon.  Later that evening, defendant, his common law wife, and their four daughters went to defendant's nephew's house where defendant continued to drink beer.  At approximately 11:30 p.m., defendant left his nephew's house in his Honda.  His wife left separately with their daughters because she and defendant had arrived in separate cars.

Defendant drove southbound on West Lane, exceeded the posted 55-mile-per-hour speed limit, and rear-ended an Oldsmobile.  The impact sent the Oldsmobile spinning, and it slammed into a signal pole on the shoulder of the intersection, killing the driver Destanee Little and injuring her two passengers.

---

[2]  Defendant also contends that his sentence on either count 5 or count 6 must be stayed pursuant to section 654 because a single course of conduct (drunk driving) may only be punished once.  The People agree.  As previously discussed, the trial court already stayed defendant's sentence on count 5.  Accordingly, this claim is moot.

3

Pablo Sanchez, Jovito Garcia, Daniel Garcia, and Michael Nava were in oncoming traffic when they observed the collision. Sanchez approached the Honda. Defendant was still in the driver's seat and appeared dazed and confused. His eyes were glassy and red, and he smelled like alcohol. Defendant eventually got out of his car and began to walk away from the scene. He was later contacted by law enforcement officers as he was walking down the road away from the scene. He had a very strong odor of alcohol and his eyes were red, watery, and glassy looking.

Two hours after the collision, defendant's blood-alcohol content was 0.21 percent. An expert estimated defendant's blood-alcohol content at the time of the collision to have been 0.25 percent.

The California Highway Patrol Multidisciplinary Accident Investigation Team (MAIT) inspected the scene, both vehicles, and the physical evidence and determined that the Oldsmobile was travelling in the number two, slow, lane at an estimated 55 miles per hour when it was struck from behind by the Honda, which was also travelling in the slow lane but at an estimated 95.5 miles per hour. The estimated post-impact speed of the vehicles was approximately 75.7 miles per hour, indicating a change in speed of about 20 miles per hour for each vehicle. The speed limit on that section of West Lane is 55 miles per hour.

The Honda's supplemental restraint system (SRS) control unit indicated a change in speed of 33.8 miles per hour at the time of the collision, indicating a pre-impact speed of approximately 109 miles per hour for the Honda and approximately 40 miles per hour for the Oldsmobile. The Honda's SRS control unit also revealed that defendant attempted to start his vehicle 10 times after the collision.

Dr. Russell Darnell testified as an accident reconstruction expert for the defense. He opined that at the time of the collision, the Honda was travelling approximately 68 miles per hour, and the Oldsmobile was travelling approximately 50 miles per hour. He

4

further opined that the initial point of impact occurred in the number one lane, and that the Honda did not enter the number two, slow, lane until after the initial impact.

Phone records for Little's cell phone showed that there was a text message sent at 11:42 p.m. and data usage consistent with a social networking connection at 11:51 p.m. on the night of the collision. It was not known who actually used the phone at those times.

In 2006, defendant pleaded no contest to driving under the influence of alcohol in violation of Vehicle Code section 23152, subdivision (b). As part of his plea agreement, defendant expressly acknowledged in writing that he understood "being under the influence of alcohol or drugs, or both, impairs my ability to safely operate a motor vehicle. It is extremely dangerous to human life to drive while under the influence of alcohol or drugs, or both. If I continue to drive while under the influence of alcohol or drugs, or both, and as a result of that driving, someone is killed, I can be charged with murder." As a result of his conviction, defendant's driver's license was suspended, and he was ordered to complete an alcohol education course. Defendant enrolled in a three-month program but attended just one class, and his driver's license was never reinstated as a result of his failure to complete the program and remained suspended at the time of the collision.

## DISCUSSION

### I
### Defendant's Second Degree Murder Conviction is Supported by Substantial Evidence

Defendant claims there was insufficient evidence of implied malice to support his conviction for second degree murder. According to defendant, the People failed to prove that he was subjectively aware of the risks of drunk driving. We disagree.

In reviewing a challenge to the sufficiency of the evidence, we review the whole record in the light most favorable to the judgment to determine whether it discloses

5

substantial evidence.  Substantial evidence is evidence that is credible, reasonable, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11.)  We do not reassess the credibility of witnesses, and we draw all inferences from the evidence that supports the jury's verdict.  (*People v. Olguin* (1994) 31 Cal.App.4th 1355, 1382.)  Unless it is physically impossible or inherently improbable, the testimony of a single witness is sufficient to support a conviction.  (*People v. Young* (2005) 34 Cal.4th 1149, 1181.)

Murder is the unlawful killing of a human being with malice aforethought.  (§ 187, subd. (a).)  "In this state, 'malice' is defined by statute as 'express' if the defendant intended 'unlawfully' to kill his victim, and 'implied' if the killing was unprovoked or the circumstances showed 'an abandoned and malignant heart.'  (§ 188.) . . . But the quoted portion of the California statutory definition of implied malice has given way to a definition more meaningful to juries, so that malice is now deemed implied ' "when the killing results from an intentional act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life." ' [Citations.]  Such conduct amounts to second degree murder . . . ."  (*People v. Martinez* (2003) 31 Cal.4th 673, 684 (*Martinez*).)  Implied malice requires that the defendant acted with a wanton disregard of a high probability of death.  (*People v. Watson* (1981) 30 Cal.3d 290, 300 (*Watson*); *People v. Moore* (2010) 187 Cal.App.4th 937, 941.)

A finding of implied malice depends upon a determination that the defendant actually appreciated the risk involved, in effect employing a subjective standard.  (*Watson*, *supra*, 30 Cal.3d at pp. 296-297.)  The defendant must know the conduct endangers another yet act with a conscious disregard for life.  (*Martinez*, *supra*, 31 Cal.4th at p. 684.)  The prosecution may prove implied malice by circumstantial evidence, and even if the act causes an accidental death, the circumstances surrounding that act may evince implied malice.  (*People v. James* (1998) 62 Cal.App.4th 244, 277-

278; *People v. Contreras* (1994) 26 Cal.App.4th 944, 954.) Malice may be implied where an intoxicated driver who kills someone appreciated the risk involved in the act. (*Watson*, *supra*, 30 Cal.3d at pp. 296-297.)

In *Watson,* our Supreme Court found the following evidence sufficient to support a conclusion that the defendant acted wantonly and with a conscious disregard for human life: "Defendant had consumed enough alcohol to raise his blood[-]alcohol content to a level which would support a finding that he was legally intoxicated. He had driven his car to the establishment where he had been drinking, and he must have known that he would have to drive it later. It also may be presumed that defendant was aware of the hazards of driving while intoxicated. As we stated in *Taylor v. Superior Court of Los Angeles County* (1979) 24 Cal.3d 890, 897: 'One who wilfully consumes alcoholic beverages to the point of intoxication, knowing that he thereafter must operate a motor vehicle, thereby combining sharply impaired physical and mental faculties with a vehicle capable of great force and speed, reasonably may be held to exhibit a conscious disregard of the safety of others.' Defendant drove at highly excessive speeds through city streets, an act presenting a great risk of harm or death. Defendant nearly collided with a vehicle after running a red light; he avoided the accident only by skidding to a stop. He thereafter resumed his excessive speed before colliding with the victims' car, and then belatedly again attempted to brake his car before the collision (as evidenced by the extensive skid marks before and after impact) suggesting an actual awareness of the great risk of harm which he had created." (*Watson*, *supra*, 30 Cal.3d at pp. 300-301.)

Here, defendant's blood-alcohol level was measured at 0.21 percent two hours after the collision, and an expert testified it would have been 0.25 percent at the time of the collision. Defendant drove to his nephew's house separate from his wife and daughters, where he continued to consume beer. Thus, the jury reasonably could infer that defendant must have known that he would have to drive the Honda later. Defendant had previously been convicted in 2006 for driving under the influence of alcohol. As part

7

of his plea agreement, defendant expressly acknowledged in writing that he understood "being under the influence of alcohol or drugs, or both, impairs my ability to safely operate a motor vehicle. It is extremely dangerous to human life to drive while under the influence of alcohol or drugs, or both. If I continue to drive while under the influence of alcohol or drugs, or both, and as a result of that driving, someone is killed, I can be charged with murder." From that evidence, the jury could reasonably presume defendant was aware of the hazards of driving while intoxicated. Defendant was driving between 95 and 109 miles per hour, nearly double the speed limit, when he rear-ended the Oldsmobile. In combination, these facts reasonably and readily support a conclusion that defendant acted wantonly and with a conscious disregard for human life. Accordingly, the jury's finding of implied malice is supported by substantial evidence.

As the court found in *People v. Moore, supra,* 187 Cal.App.4th at page 941, "Whether [defendant] was subjectively aware of the risk is best answered by the question: how could he not be? It takes no leap of logic for the jury to conclude that because anyone would be aware of the risk, [defendant] was aware of the risk." Indeed, "[o]ne who drives a vehicle while under the influence after having been convicted of that offense knows better than most that his conduct is not only illegal, but entails a substantial risk of harm to himself and others. As recognized by the court in *McCarnes*, driving under the influence constitutes a criminal offense precisely because it involves an act which is inherently dangerous. (*People v. McCarnes*[ (1986)] 179 Cal.App.3d 525, 532.) That simple fact has been made well known to all segments of our society through virtually every form of mass media. Considering today's heightened level of public awareness, we cannot believe that any person of average intelligence who has suffered a 'drunk driving' conviction would be oblivious to the risks caused by driving while intoxicated." (*People v. Brogna* (1988) 202 Cal.App.3d 700, 709.)

## II
### Defendant's Convictions in Counts 3 and 4 Must Be Vacated Because Defendant Committed a Single Act of Drunk Driving

Defendant contends, and the People agree, that his convictions in counts 3 and 4 must be vacated because defendant committed a single act of drunk driving. We agree.

Defendant was convicted of two counts of driving under the influence of alcohol or drugs causing injury in violation of subdivision (a) of Vehicle Code section 23153 (counts 3 & 5), and two counts of driving with a blood-alcohol level of 0.08% or higher causing injury in violation of subdivision (b) of Vehicle Code section 23153 (counts 4 & 6).

"[O]ne instance of drunk driving is chargeable as only one count of felony drunk driving (i.e., one count of [Veh. Code,] § 23153, subd. (a) and one count of subd. (b)) even if more than one person is injured thereby." (*Wilkoff v. Superior Court* (1985) 38 Cal.3d 345, 349, fn. omitted.)

Accordingly, we shall vacate defendant's convictions in counts 3 and 4.

## III
### The Trial Court Did Not Abuse Its Discretion in Denying Defendant's Request for a Continuance, and Even If It Did, Defendant Has Failed to Show He Was Prejudiced Thereby

Defendant claims the trial court abused its discretion in denying his motion to continue the trial, and as a result, "rendered his counsel unprepared and ultimately ineffective." We disagree.

On January 26, 2012, defendant filed a motion to continue the trial based on the need to investigate newly discovered evidence. In a supporting declaration, defendant's trial counsel explained that on January 23, 2012, he was informed by the People that the cell phone possessed by the victim Destanee Little "did show some usage during the time of the accident." According to defendant's trial counsel, prior to that time both parties had been under the impression that the phone had not been in use. Counsel asserted that

9

such evidence was relevant to the issue of causation because "usage of the phone while driving is careless and negligent driving and presents the victim as a contributing causal factor and perhaps a substantial factor in her death." Counsel requested the trial be continued to allow both sides to "examine the phone" and "to fully investigate [its] usage."

At the hearing on the motion, defendant's trial counsel explained that it was his understanding that the People "are claiming that there was an Internet connection. There was an upload and download sequence, and not vocal telephonic communication, nor texting. Again, that needs to be looked into. We have not had the opportunity to do so." Counsel continued, "[T]here may be other mechanisms on the cell phone itself from which memory can be retrieved. And we have not had time to -- to get an expert appointed to examine the cell phone to allow us to do that and find out additional information as to the usage of that cell phone. [¶] And that's why we are seeking additional time."

The People opposed a continuance, arguing that the motion was untimely and the evidence sought was nonexculpatory. The People explained that a subpoena duces tecum had been served on AT&T "that was correctly filled out asking for the correct date and time; however, . . . they fulfilled that subpoena with the wrong date." Initially, neither party caught the error. In December 2011, however, defendant's trial counsel did catch it, but failed to inform the People of the error until January 20, 2012. At that point, the People contacted AT&T and were advised that there was some usage on the phone on the date and time in question. The People provided defendant's trial counsel with a copy of the phone records a week before the hearing. Those records revealed an "Internet download" at 11:51 p.m. on the evening of the collision. As for the defense's purported need to examine the cell phone, the People argued that such an examination was not necessary given the existence of the cell phone records. The People further asserted that even if the defense were somehow able to show that Little was on the phone at the time

10

of the collision, despite the fact that there were two other people in the car, such evidence would not be exculpatory because "[t]he negligence of one person does not exculpate and absolve the proximate cause in this case, which is the defendant rear-ending Ms. Little's vehicle."

Defendant responded that proximate cause was an issue for the jury and insisted that the defense needed an expert to interpret the phone records.

The trial court denied the motion to continue without prejudice to renewing it at a later date. The court determined that the defense had failed to meet its burden of establishing good cause for a continuance, finding that there had not been "a sufficient offer of proof that there would be potential exculpatory evidence based on the theory in the case." The court noted, however, that the defense would not put on its case for at least three weeks, and that it would entertain another motion to continue at that time "based on a more sufficient offer of proof." At no time did defendant renew his request for a continuance.

At trial, Robert Beegle testified for the defense as an expert in the analysis of call detail records. Beegle reviewed the mobile usage records for Little's phone from 11:30 to 11:59 p.m. on June 12, 2010, and testified that there were two records of usage during that time period: data usage at 11:51 p.m. and a record of a text message originating from the phone at 11:42 p.m. Based on the ratio of "the data that was sent up to the network versus the data that was received from the network back down to the cellular phone," Beegle opined that the data usage at 11:51 p.m. was consistent with a social networking connection, very likely Facebook or MySpace. He could not tell from the mobile usage records who was using the cell phone at 11:42 or 11:51 p.m. on the night in question. On cross-examination, he testified that a forensic examination of the phone could reveal a "forensic fingerprint" or "personally identifying information," such as a password or PIN number, that "may help to correlate or confirm that it was a particular person using it." Even with such information, he explained that there would be no way to tell whether a

11

specific person was, in fact, using the phone at that time, or "whether or not that particular person ever loaned that password out, or the PIN number out, or something like that."

A continuance in a criminal proceeding is to be granted only upon a showing of good cause. (§ 1050, subds. (b)-(e).) In a criminal case, counsel " '[must be] given a reasonable time in which to prepare the defense.' [Citation.] Failure to respect these rights constitutes a denial of due process." (*People v. Courts* (1985) 37 Cal.3d 784, 790.) We review a trial court's denial of a motion to continue for abuse of discretion. (*People v. D'Arcy* (2010) 48 Cal.4th 257, 287.) Discretion "may not be exercised so as to deprive the defendant or his attorney of a reasonable opportunity to prepare." (*People v. Sakarias* (2000) 22 Cal.4th 596, 646.) No mechanical test determines if a denial is so arbitrary as to violate due process, rather it is determined based on the case's circumstances " ' "particularly in the reasons presented to the trial judge at the time the request is denied." ' " (*People v. Hajek and Vo* (2014) 58 Cal.4th 1144, 1181.) "The party challenging a ruling on a continuance bears the burden of establishing an abuse of discretion, and an order denying a continuance is seldom successfully attacked. [Citation.]" (*People v. Beames* (2007) 40 Cal.4th 907, 920.)

On appeal, defendant contends that the trial court's denial of his motion to continue was arbitrary and capricious and deprived him due process and a fair trial because it is clear from the record that his trial counsel "had only recently received the information and was frantically trying to investigate the new records to demonstrate to the trial court their value." While the call records were admitted later in the trial, defendant contends that "defense counsel was unprepared and unable to establish their value as he had insufficient time to prepare."

As a preliminary matter, defendant's argument ignores the fact that the trial court, in denying the motion to continue, expressed a willingness to consider a subsequent motion to continue after the defense had some additional time to investigate the phone

12

records.  The defense did not begin to put on its case until February 21, 2012, three weeks *after* the hearing on the motion to continue.  During that time, the defense retained Beegle who was able to interpret the phone records and opine on what information could be obtained from a forensic examination of the cell phone.  Nevertheless, defendant failed to renew his motion for a continuance.  "As a general matter, when a trial court denies a motion without prejudice the matter is forfeited if not renewed."  (*People v. Mills* (2010) 48 Cal.4th 158, 170.)

Even assuming for argument's sake that the claim were properly before us, it would be meritless.  Defendant makes no attempt to explain *how* he was prejudiced by the trial court's denial of his motion to continue.  As discussed above, defendant was able obtain an expert and investigate various issues related to Little's cell phone.  Significantly, Beegle was able to translate the phone records and opine on what information could be derived from a forensic examination of the cell phone.  Defendant fails to elaborate on what additional information or evidence he would have obtained had the trial been continued or how his counsel otherwise was unprepared as a result of the denial of his motion.  Absent such a showing, defendant's claim fails.  (See *People v. Barnett* (1998) 17 Cal.4th 1044, 1126 ["In the absence of a showing of an abuse of discretion and prejudice to the defendant, a denial of a motion for a continuance does not require reversal of a conviction."].)

IV

Defendant Failed to Show His Trial Counsel Was Ineffective

Defendant next contends that his trial counsel was ineffective in failing to (1) have Little's cell phone forensically examined, or (2) argue defendant's former counsel was ineffective in agreeing to release the Oldsmobile.  Again, we are not persuaded.

As previously discussed, defendant's trial counsel did not pursue having Little's cell phone examined after the trial court denied defendant's motion to continue.  In

13

addition, prior to trial, defendant's trial counsel filed a *Trombetta*[3] motion to dismiss the information based on the prosecution's release of the Oldsmobile. In a declaration filed in support of the motion, defendant's trial counsel stated that "[t]he prosecution is in possession of a letter purportedly allowing the destruction by an attorney who did not have express permission of the defendant to authorize destruction." The trial court denied the motion, finding defendant failed to establish the prosecution acted in bad faith, where defendant's prior counsel, Charles Pacheco, signed a document consenting to the release of the vehicle.

"To prevail on a claim of ineffective assistance of counsel, the defendant must show counsel's performance fell below a standard of reasonable competence, and that prejudice resulted. [Citations.] When a claim of ineffective assistance is made on direct appeal, and the record does not show the reason for counsel's challenged actions or omissions, the conviction must be affirmed unless there could be no satisfactory explanation. [Citation.] Even where deficient performance appears, the conviction must be upheld unless the defendant demonstrates prejudice, i.e., [a reasonable probability] that, ' " 'but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " ' [Citations.]" (*People v. Anderson* (2001) 25 Cal.4th 543, 569; see also *Strickland v. Washington* (1984) 466 U.S. 668, 687-688, 694 [80 L.Ed.2d 674].) "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." (*Strickland*, at p. 697.)

---

[3] *California v. Trombetta* (1984) 467 U.S. 479 [81 L.Ed.2d 413] (*Trombetta*).)

14

Defendant contends that a forensic examination of Little's cell phone was critical to the defense's theory that defendant was travelling in the number one lane when the Oldsmobile veered into that lane, causing defendant to collide with the Oldsmobile. According to defendant, "any actions by Ms. Little that directly precipitated the accident are relevant and potentially exculpatory," but "without having the phone evaluated by [a] forensic examiner, the defense was unable to solidify the testimony, which allowed the district attorney to minimize this testimony."

There are at least two problems with defendant's claim. First, the record does not disclose why defendant's trial counsel did not pursue having Little's phone examined. In such instances, the claim of ineffective assistance of counsel will be rejected unless counsel was asked for an explanation and failed to provide one or there simply could be no satisfactory explanation. (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266.) Here, there is no indication that defendant's trial counsel was asked for an explanation. Moreover, counsel could have determined that a forensic examination was unnecessary after conferring with defense expert Beegle, who was able to interpret the phone records and opined that a forensic examination of the phone could not establish who, in fact, was using the phone at 11:51 p.m. on the night in question.

Second, defendant has failed to show that he was prejudiced by counsel's failure to have the phone examined. While he contends that such an examination was necessary to "solidify the testimony," he does not specify the testimony to which he is referring. Nor does he explain how an examination of the phone otherwise would support the defense theory that Little was using the phone at the time of the collision. Absent such evidence, we must reject defendant's claim that his trial counsel was ineffective in failing to have Little's cell phone examined.

Next, we consider defendant's contention that his trial counsel was ineffective in "fail[ing] to argue that the release of the Oldsmobile was ineffective assistance by prior counsel." Defendant asserts that counsel's filing of the *Trombetta* motion was

15

"nonsensical" because to prevail on such a motion, a defendant must show bad faith on the part of the prosecution, which was impossible here because defendant's former counsel, Pacheco, consented to its release. (*People v. Pastor Cruz* (1993) 16 Cal.App.4th 322.) Defendant argues that a motion based on Pacheco's ineffective assistance of counsel would have had merit, and that his trial counsel was ineffective in not bringing such a motion. We are not persuaded.

First, the record does not disclose why Pacheco consented to a release of the Oldsmobile, and there is no indication that Pacheco was asked for an explanation. Moreover, Pacheco could have determined that the evidence gathered by MAIT, including numerous photographs of the Oldsmobile, was sufficient and that an actual inspection was unnecessary. (*People v. Mendoza Tello*, *supra*, 15 Cal.4th at p. 266 [claim of ineffective assistance of counsel will be rejected unless counsel was asked for an explanation and failed to provide one or there simply could be no satisfactory explanation].) Second, defendant failed to show he was prejudiced by the release of the Oldsmobile. While he claims in general terms that the release of the Oldsmobile inhibited his ability to attack the MAIT team's analysis or present a defense as to what actually occurred, he makes no attempt to explain why an examination of the car itself was necessary. Absent a showing that Pacheco rendered ineffective assistance, defendant is unable to establish that he would have received a more favorable result had his trial counsel moved to dismiss based on Pacheco's ineffective assistance.

V

The Trial Court Did Not Abuse Its Discretion by Limiting
the Duration of the Hearing on Defendant's New Trial Motion

Lastly, defendant contends the trial court abused its discretion "when it arbitrarily cut short the motion for new trial . . . ." We disagree.

Defendant moved for a new trial, asserting ineffective assistance of counsel. The evidentiary hearing on the motion commenced at approximately 10:00 a.m. At the

16

hearing, the defense called six witnesses, four of whom testified that morning. Before the lunch break, the defense confirmed that it only intended to call two more witnesses in the afternoon -- accident reconstructionist Dr. Russell Darnell and defendant. Darnell had already testified in the case, both at trial and at the hearing on the *Trombetta* motion, and the People agreed to stipulate to what was said at trial regarding his expertise and the scope thereof. Nevertheless, the defense began by questioning Darnell about his qualifications, and the trial court urged defense counsel to move on because "this has all been testified to in trial." Later, the defense asked Darnell what he would have done had "he had an opportunity to review the Oldsmobile," and the People objected, arguing "this was testified to at trial at length." The trial court sustained the objection, noting that there already had been lengthy hearings related to that issue. Shortly thereafter, the defense sought to question Darnell using a nine-slide PowerPoint presentation. The People objected on the ground the same evidence had been examined at length at trial during an Evidence Code section 402 hearing and on direct and cross-examination. At that point the court stated, "We're going to be done with this particular motion for new trial in the next 45 minutes by 2:30," and "[a]rgument will be limited to five minutes each."[4] Defendant, through his counsel, objected, and the trial court overruled the objection. After completing its examination of Darnell, the defense examined defendant. Thereafter, the trial court allowed each side five minutes to present argument, and gave defense counsel an additional two minutes for rebuttal. The trial court denied defendant's motion for a new trial.

---

**4**    In addition to the motion for a new trial, defendant also filed a *Romero* motion (*People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497) and a motion to continue judgment and sentence, both of which were scheduled to be heard on the same date as the motion for a new trial, along with the court trial on the priors and defendant's sentencing.

Section 1044 provides: "It shall be the duty of the judge to control all proceedings during the trial, and to *limit the introduction of evidence and the argument of counsel to relevant and material matters,* with a view to the expeditious and effective ascertainment of the truth regarding the matters involved." (Italics added.) We uphold a trial court's determinations under section 1044 unless the court patently abused its discretion. (*People v. Calderon* (1994) 9 Cal.4th 69, 79; *People v. Cline* (1998) 60 Cal.App.4th 1327, 1334.) But even if the court did abuse its discretion, the defendant must still show prejudice to obtain a reversal. (Cal. Const., art. VI, § 13; *People v. Stout* (1967) 66 Cal.2d 184, 200.)

On appeal, defendant claims that the time limits imposed by the trial court "prevented [him] from fully presenting evidence from the accident reconstructionist or [defendant] himself," and as a result, defendant was denied his right to due process of law under the federal and state Constitutions. Defendant filed a 12-page memorandum of points and authorities and a 5-page declaration in support of his motion for a new trial. At the evidentiary hearing on the motion, the trial court indicated that it had reviewed both documents along with the authorities cited therein. Defendant presented the testimony of six witnesses over approximately three hours. Prior to testifying at the hearing on the motion for a new trial, Darnell testified at the hearing on the defense's *Trombetta* motion and at trial; thus, the trial court was well versed as to his qualifications and opinions, as it intimated in ruling on the People's objections at the hearing on the motion for a new trial. Defendant does not contest those rulings on appeal. Instead, defendant takes issue with the time limits imposed by the trial court. It is well established that a trial court may impose reasonable restrictions on an examination of a witness or arguments of counsel. (See *People v. Ross* (1969) 276 Cal App 2d 729, 734 [court may curtail examination that is unduly protracted, frivolous, or which relates to matters which are irrelevant, admitted, or have already been fully covered]; see also § 1044.) Having reviewed the record, we cannot say that the trial court abused its

18

discretion in placing a time limit on Darnell's and defendant's testimony and the parties' arguments. Even assuming the trial court did abuse its discretion, defendant has failed to identify what additional evidence or argument he would have put forth had his counsel been afforded additional time. Accordingly, defendant has failed to demonstrate the prejudice required to overturn a trial court's exercise of discretion in imposing time limits on the presentation of evidence and argument. (See *People v. Stout*, *supra*, 66 Cal.2d at p. 200; see also *People v. Orchard* (1971) 17 Cal.App.3d 568, 574-575.)

## DISPOSITION

Defendant's convictions in counts 3 and 4 are vacated, and the judgment is otherwise affirmed. The trial court is directed to prepare an amended abstract of judgment and to forward a certified copy of the same to the Department of Corrections and Rehabilitation.


                /s/_____
                Blease, J.


We concur:


  /s/_____
Raye, P. J.


  /s/_____
Butz, J.