Filed 12/26/24  P. v. Chavez CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　v.<br><br>JOSE LUIS CHAVEZ,<br><br>　　　Defendant and Appellant. | B333242<br><br>(Los Angeles County<br>Super. Ct. No. KA112538) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mike Camacho, Jr., Judge.  Conditionally reversed and remanded with directions.

Joy A. Maulitz, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Rama R. Maline, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant Jose Luis Chavez appeals from the judgment after a jury convicted him of voluntary manslaughter, assault with a firearm, and possession of a firearm by a felon. Defendant requests we review the transcript from the trial court's *Pitchess*[1] hearing. He also challenges the imposition of a narcotics offender registration requirement and the trial court's calculation of credits.

We conclude the trial court withheld information that should have been disclosed in response to defendant's *Pitchess* motion. Defendant's theory at trial was the alleged victim, a police officer, had used excessive force, including firing his pistol at defendant, and defendant fired back in self-defense. Although the officer's personnel file contained complaints of excessive force and investigations of prior incidents in which the officer fired his weapon at suspects, the trial court deemed the information nondiscoverable because the court determined the complaints were unfounded and the officer-involved shootings were justified.

Our high court has declared that unfounded complaints are discoverable in response to a *Pitchess* motion. (*People v. Zamora* (1980) 28 Cal.3d 88, 93, fn. 1 (*Zamora*).) The trial court therefore erred by basing its refusal to disclose the information either on the investigating body's determination or on the court's evaluation that the complaints were unfounded and the shootings justified. We conditionally reverse the judgment and remand for further *Pitchess* proceedings and an opportunity for defendant to demonstrate prejudice from the lack of disclosure.

---

[1] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*).

We agree with defendant that should the trial court reinstate his sentence following further *Pitchess* proceedings, the court must strike the narcotics offender registration requirement, which the Legislature has repealed, and award him additional credits.

## FACTUAL BACKGROUND

We summarize the evidence presented by the prosecution relevant to this appeal. The defense did not call any witnesses, and defendant did not testify.

On May 20, 2016, at approximately 11:14 p.m., Officer Kenny Benitez of the West Covina Police Department was on patrol in his police vehicle. Benitez saw defendant and a woman, and perceived them to be handing items to one another. Benitez believed they were engaged in a narcotics transaction, although he did not see any drugs or any money change hands.

Benitez exited his vehicle and asked defendant and the woman to sit down so he could speak with them. Defendant got on a bicycle and started to ride away. Benitez told defendant to stop, but defendant did not.

As defendant attempted to ride away, he appeared to be reaching for something on the right side of his body. Benitez, concerned defendant would escape or draw a weapon, unholstered his baton and struck defendant on the shoulder. Defendant got off the bicycle and advanced towards Benitez with his fists clenched as if to fight. Benitez told defendant to stop and struck him again with the baton on either the side of his body or legs.

Defendant began to run away. Benitez struck him again with the baton and again commanded him to stop. Defendant did not stop and Benitez pursued him on foot.

As defendant reached a tree-lined median in the roadway, Benitez saw him draw a pistol. Benitez drew his own pistol. Defendant, who was partially behind a tree, fired his pistol at Benitez. Benitez fired back, then ran for cover. Defendant continued to fire, and one of his bullets struck Benitez in the lower back. Benitez fired back at defendant, then ran again until his "body just gave out" and he fell to the ground. After a further exchange of gunfire, Benitez saw defendant disappear over a fence.

Defendant was arrested several days later. He had suffered gunshot wounds to his left arm and right thumb. A nine-millimeter pistol located in a bush near the scene matched the cartridge cases found at the scene, and defendant's DNA was found on the pistol.

Several days after the incident, a homeowner who lived near the scene found bloody pants and a black baggie on her property. The bag contained methamphetamine.

## PROCEDURAL BACKGROUND

A second amended information charged defendant with attempted murder of a peace officer (Pen. Code,[2] §§ 664/187, subd.(a))[3], assault with a semiautomatic firearm upon a peace officer (§ 245, subd. (d)(2)), and possession of a firearm by a felon

---

[2] Unspecified statutory citations are to the Penal Code.

[3] If the intended victim of an attempted murder is a peace officer "engaged in the performance of his or her duties, and the defendant knew or reasonably should have known that the victim was a peace officer engaged in the performance of his or her duties," those facts "shall be considered a circumstance in aggravation of the crime" when imposing sentence. (§ 1170.81.)

(§ 29800, subd. (a)(1)).  As to the attempted murder and assault counts, the information alleged firearm use enhancements under section 12022.53, subdivisions (b), (c), and (d).  The information further alleged defendant was out on bail at the time he committed the offenses, and that he had suffered a prior serious felony conviction rendering him eligible for an enhancement under section 667, subdivision (a), and sentencing under the "Three Strikes" law.

A jury acquitted defendant of attempted murder and assault with a semiautomatic firearm upon a peace officer, but found him guilty of the lesser-included offenses of attempted voluntary manslaughter and assault with a firearm.  As to both lesser-included offenses the jury found true allegations under section 12022.5 that defendant personally used a firearm.[4]  The jury also found defendant guilty of possession of a firearm by a felon.  Defendant admitted the prior strike conviction and that he had been out on bail at the time of the instant offenses.

On July 20, 2023, the trial court sentenced defendant to the midterm of three years for the voluntary manslaughter count, doubled to six years because of the prior strike.  The court added five years for the prior conviction allegation under section 667, subdivision (a)(1), four years for the firearm enhancement under section 12022.5, subdivision (a), and two years for the out-on-bail enhancement.  For the firearm possession count, the court imposed a consecutive sentence of eight months (one-third the

---

[4] Because the jury acquitted defendant of attempted murder and assault on a peace officer, he was no longer eligible for the more severe firearm enhancements under section 12022.53.  (See § 12022.53, subd. (a) [listing felonies to which enhancement applies].)

midterm), doubled to one year four months because of the prior strike. The court sentenced defendant to three years on the assault count with an additional four years for the firearm enhancement, but stayed execution of the sentence under section 654.

The trial court also sentenced defendant in the case for which he was out on bail at the time he committed the offenses at issue in the instant case, case No. KA111445. In that matter, defendant had been found guilty by way of open plea of violations of sections 4573, subdivision (a) (bringing contraband into a jail facility), section 21510, subdivision (b) (carrying a switchblade knife), and Health and Safety Code section 11378 (possession for sale of a controlled substance).

On the contraband count, the court imposed one year (one-third the midterm) doubled to two years because of the prior strike. The court imposed but stayed a two-year sentence on the possession count pursuant to section 654, and imposed a six-month concurrent sentence for the switchblade count. Defendant's total sentence for all counts therefore was 20 years 4 months.

The court awarded credits, described further in our Discussion, *post*, and imposed fines and fees. The court also ordered defendant to register as a narcotics offender once released from confinement.

Defendant timely appealed.

## DISCUSSION

### A. The Trial Court Erred In Not Disclosing Information In Response to Defendant's *Pitchess* Motion

#### 1. Applicable law

"In *Pitchess*[, our high court] held that a criminal defendant's fundamental right to a fair trial and an intelligent defense in light of all relevant and reasonably accessible information entitled a defendant, who was asserting self-defense to a charge of battery on a police officer, to discovery of police personnel records." (*City of San Jose v. Superior Court* (1993) 5 Cal.4th 47, 52, citing *Pitchess, supra*, 11 Cal.3d at pp. 535–537.) "In 1978, the California Legislature codified the holding of *Pitchess* by enacting Penal Code sections 832.7 and 832.8, as well as Evidence Code sections 1043 through 1045." (*Warrick v. Superior Court* (2005) 35 Cal.4th 1011, 1019 (*Warrick*).)

"To initiate discovery, the defendant must file a motion supported by affidavits showing 'good cause for the discovery[.]' " (*Warrick, supra*, 35 Cal.4th at p. 1019.) "If the trial court finds good cause for the discovery, it reviews the pertinent documents in chambers and discloses only that information falling within the statutorily defined standards of relevance." (*Ibid.*)

The "statutorily defined standards of relevance" referred to in *Warrick* are found in Evidence Code section 1045. (See *Warrick, supra*, 35 Cal.4th at p. 1019 [citing Evid. Code, § 1045].) That statute states that the court shall not disclose "the conclusions of any officer investigating a complaint filed pursuant

7

to Section 832.5 of the Penal Code,"[5] or facts "that are so remote as to make disclosure of little or no practical benefit." (Evid. Code, § 1045, subd. (b).) At the time of the *Pitchess* proceedings in this case, the statute also precluded disclosure of "complaints concerning conduct occurring more than five years before the event or transaction that is the subject of the litigation in aid of which discovery or disclosure is sought." (Evid. Code, § 1045, former subd. (b)(1), Stats. 2002, ch. 391, § 2.)[6]

When requested to do so by a defendant, we independently review the transcript of the trial court's in camera *Pitchess* hearing to determine whether the trial court disclosed all relevant information. (*People v. Mooc* (2001) 26 Cal.4th 1216, 1229.) We review a trial court's ruling on a *Pitchess* motion for abuse of discretion. (*People v. Hughes* (2002) 27 Cal.4th 287, 330.)

### 2.    Additional background

Officer Benitez was a police officer in Montebello for eight years before joining the West Covina Police Department. In advance of trial, defendant filed a *Pitchess* motion seeking information from Benitez's Montebello personnel records concerning, inter alia, incidents of dishonesty and excessive

---

[5] Section 832.5 governs complaints against peace officers by members of the public.

[6] The Legislature removed the five-year limitation effective January 1, 2022. (See Sen. Bill No. 16 (2021–2022 Reg. Sess.), Stats. 2021, ch. 402, § 1.) The parties do not address that amendment in their appellate briefing, and we express no opinion as to how, if at all, the amendment affects the proceedings on remand.

force.[7]  Defendant in his motion contended he fired at Benitez in self-defense after Benitez struck defendant with a baton and fired at defendant without provocation.  Defendant stated he intended to argue at trial that Benitez lied about the circumstances of the incident and used excessive force, and defendant would use personnel records concerning dishonesty and excessive force to impeach Benitez at trial.

At the hearing on the motion, counsel for the Montebello Police Department conceded defendant had shown good cause to obtain information from Benitez's personnel file concerning excessive force and dishonesty.  The court granted the motion as to those two issues.  The court then held an in camera hearing with the Montebello Police Department's custodian of records as well as the department's counsel, and concluded there were no disclosable records.

### 3.    Analysis

Defendant asks us to review the transcript of the in camera *Pitchess* hearing and the documents reviewed by the trial court to determine whether the trial court abused its discretion in not disclosing any.  The Attorney General does not object to our conducting this review.

---

[7]  Defendant in a separate, earlier motion also sought Benitez's records from the West Covina Police Department.  The trial court granted the motion and conducted an in camera hearing at which it concluded there were no records responsive to the motion.  Defendant does not contest that ruling or request that we review the transcript of the in camera hearing, and we therefore do not address it further.

As an initial matter, the record before us does not include all documents reviewed by the trial court. The transcript of the *Pitchess* hearing indicates the trial court reviewed documents pertaining to five incidents. The trial court did not preserve the documents, and we therefore ordered counsel for the Montebello Police Department to produce a copy of the documents presented to the trial court. In response to that order, counsel provided documents pertaining to two of the five incidents, identified as 11-2074 and 12-3589, both of which were officer-involved shootings. Counsel also provided a declaration from Lieutenant David Kim of the Montebello Police Department stating the documents pertaining to the other three incidents, identified as 14-05, 14-22, and 15-02, "had been purged in the time period between the in-camera review and my search."

Of the two officer-involved shooting incidents for which counsel provided documents, it appears those documents, which consist of police reports, are not the entirety of what the trial court had before it. The *Pitchess* hearing transcript refers, for example, to a 160-page "investigation book" prepared by the Los Angeles County Sheriff's Department homicide bureau pertaining to 11-2074, which is not before us. Regarding 12-3589, the trial court referred to an investigation and its conclusions, but no document reflecting such an investigation is before us.

The record is sufficient, however, for us to conclude there was responsive information before the trial court that the court should have disclosed to defendant. As discussed, defendant sought information relevant to his contention that Benitez had used excessive force against him, including shooting at him, and defendant's shooting at Benitez was in self-defense.

10

11-2074 and 12-3589 were prior incidents in which Benitez discharged his firearm at a suspect. The trial court determined those incidents were not subject to disclosure because, upon review of the documentation before it, the court concluded the shootings were justified and did not demonstrate excessive force. Not disclosing these incidents was error. In *Pitchess* proceedings, "Unsustained complaints are discoverable as well as sustained complaints." (*Zamora, supra*, 28 Cal.3d at p. 93, fn. 1.) The fact that Benitez had fired at suspects on two prior occasions, whether justified or unjustified, was relevant to defendant's self-defense claim and the court should have disclosed information pursuant to *Pitchess* as to those prior incidents.

Reviewing the trial court's description in the *Pitchess* transcript of the incidents identified as 14-22 and 15-02, we conclude those also were relevant to defendant's self-defense claim. 14-22 involved a complaint that Benitez had used excessive force while handcuffing a suspect. 15-02 involved a complaint from a jail inmate claiming that Benitez and other officers had used excessive force in restraining the inmate. The trial court concluded these incidents were not discoverable because witnesses and video evidence demonstrated the complaints were unfounded. Again, that these complaints may have been unfounded was not a basis not to disclose information required by *Pitchess* about those incidents. (*Zamora, supra*, 28 Cal.3d at p. 93, fn. 1.)[8]

---

[8] As to the fifth incident reviewed by the trial court, identified as 14-05, we agree it was not responsive to defendant's *Pitchess* request, and the trial court did not abuse its discretion in not ordering its disclosure.

We note one other deficiency with the trial court's *Pitchess* review. "[I]n cases . . . where the custodian of records does not produce the entire personnel file for the [trial] court's [*Pitchess*] review, he or she must establish on the record what documents or category of documents were included in the complete personnel file. In addition, if it is not readily apparent from the nature of the documents that they are nonresponsive or irrelevant to the discovery request, the custodian must explain his or her decision to withhold them. Absent this information, the court cannot adequately assess the completeness of the custodian's review of the personnel files, nor can it establish the legitimacy of the custodian's decision to withhold documents contained therein." (*People v. Guevara* (2007) 148 Cal.App.4th 62, 69; accord, *Sisson v. Superior Court* (2013) 216 Cal.App.4th 24, 39.)

Here, it appears from the *Pitchess* transcript the trial court reviewed only selected records provided by the custodian of records rather than Benitez's complete personnel file. The custodian did not state for the record what other documents were in the complete personnel file, and therefore the trial court could not determine whether the custodian properly withheld those additional documents, nor can we.

The remedy for *Pitchess* error is a conditional reversal, remand for proper *Pitchess* proceedings, and an opportunity for defendant to establish he was prejudiced by the denial of discovery in advance of trial. (*People v. Wycoff* (2008) 164 Cal.App.4th 410, 415.) If defendant "cannot establish that he was prejudiced by the denial of discovery, the judgment shall be reinstated as of that date." (*Id.* at p. 416.)

In accordance with these principles, on remand the trial court is directed to do the following. First, the court shall hold a

new *Pitchess* in camera hearing in which the Montebello Police Department shall provide the court with all existing records from Benitez's personnel file concerning the incidents identified as 11-2074, 12-3589, 14-22, and 15-02, including, if available, the "investigation book" prepared by the Los Angeles County Sheriff's Department homicide bureau in regard to 11-2074, and any documents concerning investigation of 12-3589. The trial court should address in the first instance the Montebello Police Department's representation to this court that certain documents provided in the original *Pitchess* hearing have since been purged.

Second, to the extent the custodian of records for the Montebello Police Department does not provide the trial court with Benitez's complete personnel file, the custodian shall state on the record during the in camera hearing what documents or category of documents were included in the complete personnel file. If it is not readily apparent from the nature of the documents that they are nonresponsive or irrelevant to the discovery request, the custodian must explain his or her decision to withhold them. Should the court disagree with the custodian's decision to withhold certain documents, the court shall request those documents be produced to the court for review.

Third, the court shall disclose to defendant the records allowed under Evidence Code section 1045 concerning the incidents identified as 11-2074, 12-3589, 14-22, and 15-02. If, as explained in the previous paragraph, the court requests additional documents from the custodian and determines those documents are responsive to defendant's *Pitchess* motion, the court shall disclose those records as well, also subject to the limitations in Evidence Code section 1045. We reiterate that the trial court should not withhold information about these incidents

13

based on an investigating body's or the trial court's own determination that the weight of the evidence does not demonstrate excessive force or dishonesty.  Even unfounded complaints are subject to disclosure.[9]

Fourth, should the Montebello Police Department or Benitez so move, the court "may make any order which justice requires to protect the officer or agency from unnecessary annoyance, embarrassment or oppression."  (Evid. Code, § 1045, subd. (d).)  The court also shall "order that the records disclosed or discovered may not be used for any purpose other than a court proceeding pursuant to applicable law."  (*Id.*, subd. (e).)

Fifth, the court shall give defendant a reasonable opportunity to investigate the disclosed material and demonstrate prejudice, if any, namely a reasonable probability of a different outcome had the evidence been disclosed in advance of trial.  (See *People v. Fernandez* (2012) 208 Cal.App.4th 100, 123; *People v. Gaines* (2009) 46 Cal.4th 172, 181.)  If defendant demonstrates prejudice, the court shall order a new trial; otherwise, the court shall reinstate the judgment.  (*Fernandez*, at p. 123.)

---

[9] We note defendant already has had access to some information regarding the incidents, because Lieutenant Kim's declaration filed with this court summarized the five incidents addressed in the original *Pitchess* hearing.  Further, when counsel for the Montebello Police Department lodged the documents concerning 11-2074 and 12-3589 with this court, the proof of service indicated counsel also served the documents on defendant's appellate counsel.  We express no opinion how these disclosures affect the *Pitchess* proceedings on remand, a question the trial court should address in the first instance.

14

## B. The Trial Court Must Strike the Narcotics Offender Registration Requirement

The trial court ordered defendant to register as a narcotics offender when released. The parties agree Health and Safety Code former sections 11590 and 11594, which codified the narcotics offender registration requirement, were no longer in effect at the time of defendant's sentencing. (See *People v. Pinedo* (2021) 66 Cal.App.5th 608, 613 [narcotics offender registration requirement repealed effective Jan. 1, 2020], citing Stats. 2019, ch. 580, §§ 1, 7–8.) Should the trial court reinstate the judgment following further *Pitchess* proceedings, we direct the court to amend the judgment to strike the registration requirement.

## C. Defendant Is Entitled to Additional Credits

Defendant argues the trial court miscalculated his custody and conduct credits. We agree.

Under section 2900.5, a defendant is entitled to credit for all days spent in presentence custody including the day of sentencing. (*People v. Browning* (1991) 233 Cal.App.3d 1410, 1412 (*Browning*).) Additional conduct credits are capped at 15 percent of custody credits for defendants convicted of specified crimes including voluntary manslaughter. (§§ 667.5, subd. (c)(1); 2933.1, subd. (a).) The 15-percent calculation is rounded down to "the largest whole number of days which d[o] not exceed 15 percent." (*People v. Ramos* (1996) 50 Cal.App.4th 810, 815; accord, *People v. Jacobs* (2013) 220 Cal.App.4th 67, 85.)

Here, the trial court calculated defendant's days in custody from his date of arrest on May 24, 2016 to his date of sentencing on July 20, 2023. The court awarded him 2,613 days in custody

15

credit, and awarded him an additional 15 percent of that amount, or 391 days, in conduct credit, for a total of 3,004 days.

Defendant correctly observes that, including the day of sentencing (*Browning, supra*, 233 Cal.App.3d at p. 1412), the court should have awarded him 2,614 days in custody credit, which in turn would entitle him to 392 days of conduct credit (15 percent of 2,614), for a total of 3,006 days.

The Attorney General does not dispute the trial court failed to include the day of sentencing in its custody calculation, but argues defendant's day of arrest was in fact May 26, 2016, citing the trial testimony of a detective with the Los Angeles County Sheriff's Department.

During sentencing, the trial court stated defendant was arrested on May 24, 2016, a date the prosecution did not dispute. The court's finding was consistent with defendant's probation reports prepared February 21, 2017 and July 17, 2023, which also listed May 24, 2016 as the date of arrest. We conclude the trial court correctly determined the date of arrest was May 24, 2016. Accordingly, should the trial court reinstate the judgment following further *Pitchess* proceedings, defendant is entitled to one additional day of custody credit and one additional day of conduct credit.

D.    **The Trial Court Must Calculate Defendant's Credits for Case No. KA111445**

As discussed, the trial court sentenced defendant not only for the offenses at issue in the instant case, case No. KA112538, but also for the offenses in case No. KA111445, the matter on which defendant was out on bail when he committed the offenses at issue in case No. KA112538. During the calculation of credits, defense counsel stated he had not calculated credits for case

16

No. KA111445, and asked defendant if he spent any time in custody in that case. Defendant said, "Probably 50 days."

The trial court awarded no credits for case No. KA111445, instead basing the credits award entirely on case No. KA112538. The court stated, "In the event the court's calculation is incorrect given the defendant's other case [i.e., case No. KA111445] . . . , the Department of Corrections can always send us a letter to correct the custody credits."

On appeal, defendant argues his date of arrest and the date he was released on bail in case No. KA111445 can be determined by examining the " 'criminal case access' " function on the trial court's public website, which he contends demonstrates he is entitled to 76 days of custody credit and 38 days of conduct credit. The Attorney General argues defendant is relying on evidence not before the trial court at the time of sentencing, and suggests we remand the matter for the trial court to consider defendant's calculation and supporting evidence. We agree with the Attorney General the trial court should determine defendant's entitlement to credits in the first instance, and we direct the court to do so upon remand.

## DISPOSITION

The judgment is conditionally reversed, and the matter remanded for further *Pitchess* proceedings as set forth in this opinion. If defendant demonstrates prejudice from lack of *Pitchess* disclosure, the trial court shall order a new trial; otherwise it shall reinstate the judgment. Should the trial court reinstate the judgment, it shall 1) strike the narcotics offender registration requirement; 2) add one day of custody credit and one day of conduct credit; 3) calculate and award credits in case No. KA111445; and 4) forward the modified abstract of judgment to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED.

BENDIX, J.

We concur:

ROTHSCHILD, P. J.

M. KIM, J.

18